**F I L E D**
CLERK, U.S. DISTRICT COURT

11/10/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____DTA_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

April 2021 Grand Jury

| UNITED STATES OF AMERICA, | CR No. 8:21-cr-00084(A)-JLS |
|---|---|
| Plaintiff, | **FIRST SUPERSEDING INDICTMENT** |
| v. | |
| IAN R. DIAZ, | [18 U.S.C. § 371: Conspiracy; 18 U.S.C. §§ 2261A, 2: Cyberstalking; 18 U.S.C. § 1621: Perjury; 18 U.S.C. §§ 1519 & 2: Obstruction] |
| Defendant. | |

The Grand Jury charges:

### COUNT ONE

[18 U.S.C. § 371]

A.  **INTRODUCTORY ALLEGATIONS**

At all times relevant to this Indictment,

    1.    Defendant IAN R. DIAZ ("DIAZ") lived in the Central District of California.

    2.    Unindicted Co-Conspirator 1 ("UCC-1") intermittently lived in the Central District of California.

3. In or about June 2015, defendant DIAZ and an individual hereinafter anonymized as Jane Doe ("Jane Doe"), who were dating at the time, jointly purchased a condominium (hereinafter the "Property"), located in Anaheim, California, within the Central District of California, with Jane Doe providing the funds for the down payment.

4. Defendant DIAZ and Jane Doe terminated their relationship in or about August 2015, and Jane Doe moved out of the Property.

5. In or about January 2016, defendant DIAZ and UCC-1 began dating and cohabitating at the Property that defendant DIAZ still jointly owned with Jane Doe.

6. Defendant DIAZ and UCC-1 married in or about February 2016. Their marriage was annulled on April 11, 2017.

7. Defendant DIAZ and Jane Doe were in an ongoing dispute regarding the Property from in or about August 2015 until in or about October 2016, when defendant DIAZ sold the Property.

B.   OBJECT OF THE CONSPIRACY

8. From at least in or about May 2016, and continuing through at least in or about September 2016, in the Central District of California, and elsewhere, defendant DIAZ, by a variety of means and together with UCC-1, knowingly and unlawfully conspired, confederated, and agreed together and with each other, with the intent to harass and intimidate another person, namely, Jane Doe, to use the mail, interactive computer services and electronic communication services and an electronic communication system of interstate commerce, and other facilities of interstate and foreign commerce, to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial

2

emotional distress to a person, namely, Jane Doe, in violation of Title 18, United States Code, Section 2261A(2).

C.  PURPOSES OF THE CONSPIRACY

9. It was a purpose of the conspiracy to engage in a cyberstalking campaign to harass and intimidate Jane Doe by framing her for criminal conduct that she did not commit.

10. It was also a purpose of the conspiracy to interfere with Jane Doe's interest in the Property.

11. It was also a purpose of the conspiracy for defendant DIAZ and UCC-1 to hide, conceal, and cover up their involvement in the conspiracy and the nature and scope of their conduct.

D.  MANNER AND MEANS OF THE CONSPIRACY

12. The manner and means by which defendant DIAZ and UCC-1 achieved, and attempted to achieve, the object of the conspiracy, included, but were not limited to, the following:

   a. Defendant DIAZ and UCC-1 used and created multiple online accounts using false names, including, but not limited to, (1) accounts using Jane Doe's name, variations of her name, and names and phrases associated with Jane Doe, such as "Lilithistruth;" (2) names and phrases associated with defendant DIAZ; and (3) names and phrases associated with others known to defendant DIAZ and UCC-1.

   b. Defendant DIAZ and UCC-1 posed as Jane Doe and sent to themselves harassing and threatening electronic communications. Some of the messages contained express or implied threats to harm UCC-1.

   c. Defendant DIAZ and UCC-1, sometimes posing as Jane Doe, and based in part on defendant DIAZ's prior knowledge of, and experience with, Craigslist and "personal" advertisements, used Craigslist, e-mail, text messaging, and other methods to solicit, and

3

then lure, individuals found through Craigslist "personal" advertisements, to come to the Property and engage in a "rape fantasy" with UCC-1, in an attempt to stage a non-consensual sexual assault on UCC-1, with the other party believing that the sexual encounter would be consensual.

   d. Defendant DIAZ and UCC-1 staged one or more hoax sexual assaults and hoax attempted sexual assaults on UCC-1.

   e. Defendant DIAZ and UCC-1 reported the conduct described in paragraphs 12a. – 12d. to 911 operators, local law enforcement, and others, and falsely claimed that Jane Doe was responsible for the conduct and that Jane Doe posed a genuine and serious threat to defendant DIAZ and UCC-1 and their safety.

   f. Defendant DIAZ and UCC-1 asked and caused local law enforcement to arrest, charge, and ultimately detain Jane Doe, in jail, for approximately 88 days, for conduct for which they framed Jane Doe and in fact perpetrated on themselves.

   g. Defendant DIAZ and UCC-1 took steps to conceal their conduct including, but not limited to, using falsely registered email accounts, using virtual private networks to access the internet anonymously, and communicating with one another using encrypted messaging services.

E. <u>OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY</u>

  13. On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendant DIAZ, together with UCC-1, committed, and willfully caused others to commit the following overt acts, among others, within the Central District of California, and elsewhere:

4

Overt Act No. 1: On or about May 24, 2016, using the nickname of an individual associated with UCC-1, defendant DIAZ and UCC-1 created a social media and email account that were later used in furtherance of the conspiracy and cyberstalking scheme.

Overt Act No. 2: On or about June 1, 2016, defendant DIAZ and UCC-1 created an email account using the name "Lilithistruth," and later used that account to frame Jane Doe for criminal conduct she did not commit.

Overt Act No. 3: On or about June 5 and June 6, 2016, defendant DIAZ and UCC-1 used the "Lilithistruth" account to send themselves harassing and threatening messages in furtherance of framing Jane Doe for criminal conduct she did not commit.

Overt Act No. 4: On or about June 6, 2016, defendant DIAZ and UCC-1 created an email account using the name "Ianrdiaz" that was later used as part of the conspiracy and defendant DIAZ's cyberstalking campaign against Jane Doe.

Overt Act No. 5: On or about June 6, 2016, defendant DIAZ, in furtherance of framing Jane Doe for criminal conduct she did not commit, forwarded an email from UCC-1's e-mail account, to local law enforcement, that was purportedly received by UCC-1 from Jane Doe using the "Lilithistruth" account, and that had threatening language and photos of dead fetuses.

Overt Act No. 6: On or about June 13, 2016, defendant DIAZ and UCC-1 used the "Lilithistruth" account to respond to multiple "personal" advertisements on Craigslist posted by individuals interested in a "rape fantasy" in an attempt to lure these individuals to the Property and in furtherance of convincing local

law enforcement that Jane Doe posed a genuine and serious threat to defendant DIAZ and UCC-1 and their safety.

Overt Act No. 7: On or about June 13, 2016, defendant DIAZ, using his personal email account, communicated with a Craigslist poster to lure him to the Property, ostensibly to engage in a "rape fantasy" with UCC-1 and in furtherance of convincing local law enforcement that Jane Doe posed a genuine and serious threat to defendant DIAZ and UCC-1 and their safety.

Overt Act No. 8: On or about June 13, 2016, defendant DIAZ accessed UCC-1's personal email account from his workplace computer.

Overt Act No. 9: On or about June 13, 2016, defendant DIAZ and UCC-1 called local law enforcement to the Property. When responding officers were at the Property, defendant DIAZ, in furtherance of falsely reporting to local law enforcement that Jane Doe posed a genuine and serious threat to defendant DIAZ and UCC-1, among other things:

    i. Stated that Jane Doe "needs to be in fucking cuffs and in a padded room[.]"

    ii. Complained that no action had been taken against Jane Doe.

    iii. Referenced the fact that he investigates threats made to federal judges and prosecutors as part of his work as a Deputy United States Marshal and that he has "never seen anything like this."

Overt Act No. 10: On or about June 18, 2016, defendant DIAZ falsely told local law enforcement officers that Jane Doe had forwarded additional emails indicating that another Craigslist user was going to rape UCC-1 and, among other statements, defendant DIAZ:

6

          i.    Stated, "At what point does this girl get arrested for sending this shit and hiring guys off Craigslist to rape [UCC-1]?"

          ii.   Urged officers to arrest Jane Doe, telling them that she had been "hiding out" at her parents' home in a nearby town he identified.

          iii. Stated, "We would like someone to get in touch with [that town's] [police department] and maybe make a run by the parents' house to see if she is there."

<u>Overt Act No. 11</u>: On or about June 19, 2016, and in furtherance of convincing local law enforcement that Jane Doe posed a genuine and serious threat to defendant DIAZ and UCC-1 and their safety, defendant DIAZ, using his personal cell phone, communicated by text with another Craigslist poster in an attempt to lure him to the Property, ostensibly to engage in a "rape fantasy" with UCC-1.

<u>Overt Act No. 12</u>: On or about June 24, 2016, UCC-1 called 911 to report that she had been sexually assaulted outside of the Property and falsely indicated that Jane Doe was responsible, causing Jane Doe to be arrested by local law enforcement.

<u>Overt Act No. 13</u>: On or about June 26, 2016, in order to continue framing Jane Doe for criminal conduct she did not commit, defendant DIAZ and UCC-1 used the "Lilithistruth" account to post "rape fantasy" advertisements on Craigslist seeking individuals interested in a "rape fantasy" with UCC-1 at the Property.

<u>Overt Act No. 14</u>: On or about June 26, 2016, defendant DIAZ used his personal cell phone, with associated number ending in 0810, to authenticate and approve one of the "rape fantasy" advertisements

7

that was posted on Craigslist by the "Lilithistruth" account and used in the conspiracy and cyberstalking campaign.

Overt Act No. 15: On or about June 27, 2016, in an effort to conceal his connection to the "rape fantasy" Craigslist advertisements, defendant DIAZ canceled the cellular phone service associated with the number ending in 0810 and obtained a new cell phone number ending in 8868.

Overt Act No. 16: On or about July 12-13, 2016, defendant DIAZ and UCC-1 communicated with multiple individuals who had posted or responded to Craigslist "rape fantasy" advertisements, in an attempt to lure these individuals to the Property.

Overt Act No. 17: On or about July 12-13, 2016, in furtherance of convincing local law enforcement that Jane Doe posed a genuine and serious threat to defendant DIAZ and UCC-1 and their safety, defendant DIAZ forwarded to local law enforcement a series of threatening emails that he claimed had come from Jane Doe via the "Lilithistruth" account, including claiming that Jane Doe had posted another "rape fantasy" targeting UCC-1.

Overt Act No. 18: On or about July 13, 2016, defendant DIAZ and UCC-1 communicated with a Craigslist poster regarding a sexual encounter, lured them to the property, and then contacted local law enforcement and reported that individual's presence at the Property.

Overt Act No. 19: On or about July 14, 2016, defendant DIAZ and UCC-1, as a result of their actions framing Jane Doe, and in order to harass and intimidate Jane Doe and interfere with Jane Doe's interest in the Property, caused Jane Doe to be arrested for a second time and placed in custody until in or about October 2016.

Overt Act No. 20: On or about July 31, 2016, defendant DIAZ created an e-mail account in a name similar to an individual DIAZ dated prior to UCC-1 and that was later used in furtherance of the conspiracy and cyberstalking campaign.

Overt Act No. 21: On or about August 1, 2016, defendant DIAZ logged into the account he created the day before from his work cell phone assigned to him by the United States Marshals Service.

Overt Act No. 22: On or about August 1, 2016, defendant DIAZ and UCC-1 used the account DIAZ created on July 31, 2016, and sent e-mail messages to defendant DIAZ's personal e-mail account and to UCC-1's personal e-mail account, in furtherance of the conspiracy and cyberstalking campaign.

Over Act No. 23: On or about August 2, 2016, in order to conceal his involvement in the conspiracy with UCC-1 and the cyberstalking campaign, defendant DIAZ changed his personal cell phone number ending in 8868 to a new number ending in 0590.

Overt Act No. 24: On or about August 3, 2016, in order to conceal his involvement in the conspiracy with UCC-1 and the cyberstalking campaign, defendant DIAZ caused to be deleted one of his personal e-mail accounts.

All in violation of 18 U.S.C. § 371.

## COUNT TWO
[18 U.S.C. §§ 2261A(2), 2]

14. The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 7, and 9 through 13, of this Indictment as though set forth in their entirety herein.

A.   Additional Conduct by Defendant DIAZ

15. On or about September 24, 2016, defendant DIAZ spoke to local law enforcement via telephone and indicated that he believed UCC-1 was solely responsible for framing Jane Doe and concealed his involvement in the conspiracy.

16. On or about September 30, 2016, in order to conceal his involvement in the conspiracy and cyberstalking campaign, defendant DIAZ spoke in person with local law enforcement and stated that he believed UCC-1 may have framed Jane Doe. DIAZ represented to local law enforcement officials that he initially became suspicious of UCC-1 in or about early August 2016, when he received emails from the account he in fact created on July 31, 2016, and that he previously accessed using his work phone.

17. Beginning in or about May 2016, and continuing through in or about December 2016, defendant Diaz took steps to hide his course of conduct utilized in the cyberstalking campaign including, but not limited to, by using encrypted text communications methods to communicate with UCC-1, using overseas encrypted e-mail providers, deleting his personal e-mail accounts, and changing his cell phone numbers.

B. The Charge

18. From at least in or about May 2016 through at least in or about September 2016, in the Central District of California and elsewhere, IAN R. DIAZ, the defendant, with the intent to harass and intimidate another person, namely, Jane Doe, used the mail, an interactive computer service and electronic communication service and electronic communication system of interstate commerce, and other facilities of interstate and foreign commerce, to engage in a course of conduct that caused, attempted to cause, and would be reasonably

10

expected to cause substantial emotional distress to a person, namely, Jane Doe.

All in violation of 18 U.S.C. §§ 2261A(2) and 2.

## COUNT THREE

[18 U.S.C. § 1621]

19. On or about September 30, 2019, in the Central District of California, IAN R. DIAZ, the defendant, having taken an oath before a competent tribunal, officer, and person, in any case in which a law of the United States authorized an oath to be administered, that he would testify, declare, depose, and certify truly, and that any written testimony, declaration, deposition, and certificate by him subscribed, was true, willfully and contrary to such oath stated and subscribed any material matter which he did not believe to be true, specifically, during his sworn deposition testimony, taken on September 30, 2019, in the Central District of California in connection with [Jane Doe] v. City of Anaheim, et al, SA CV 18-1831-DOC-KES, defendant DIAZ, when asked about whether he had access to UCC-1's online accounts, stated (underlined portions alleged false):

> Attorney: "What about during your relationship with [UCC-1]? Did you ever access [UCC-1]'s accounts?"
>
> Defendant DIAZ:       "<u>No.</u>"
>
> Attorney: "Did you ever send any e-mails from her account?"
>
> Defendant DIAZ:       "No."
>
> Attorney: "Did you ever forward any e-mails to APD [Anaheim Police Department] from her account?"
>
> Defendant DIAZ:    "No. Correction. I would forward e-mails that she had already forwarded to me."

11

1      Attorney:       "So you would forward them from your account?"
2      Defendant DIAZ:    "Yes. If I received something from her that
3      I thought was relevant to Detective Cunha and that she had not
4      cc'd him already on it, I would send it."
5      Attorney: "So were there ever situations where you would see an
6      e-mail arrive into [UCC-1]'s account before she would?"
7      Defendant DIAZ:        "No, no."
8      Attorney: "So any e-mail that she forwarded to APD – or any e-
9      mail that was forwarded through her accounts through -- to APD
10     was sent from her?"
11     Defendant DIAZ:        "Yes."
12     In truth and in fact, as DIAZ well knew at the time that he gave
13 his sworn testimony, his statements were false, in that DIAZ
14 repeatedly accessed UCC-1's online accounts and sent e-mails from
15 UCC-1's e-mail account, including in connection with the
16 cyberstalking scheme.
17     All in violation of 18 U.S.C. § 1621.
18
19                            COUNT FOUR
20                        [18 U.S.C. §§ 1519, 2]
21     20.  The Grand Jury incorporates by reference and re-alleges
22 paragraphs 1 through 7, 9 through 13, and 15 through 17, of this
23 Indictment as though set forth in their entirety herein.
24     A.   Background
25     21.  On or about June 17, 2016, the United States Marshals
26 Service Office of Professional Responsibility, Internal Affairs
27 ("USMS-OPRIA") opened an administrative investigation into
28

allegations that defendant DIAZ was harassing Jane Doe by framing her for harassing UCC-1.

B. Additional Conduct by Defendant DIAZ

22. On or about June 27, 2016, defendant DIAZ emailed an investigator from the USMS-OPRIA and wrote, in part: "Recently, a person from my past sent out some disturbing emails to friends and co-workers of mine, and it was discovered that one may have been sent to you. If you have received any emails from non-USMS personnel, namely '[Jane Doe]' or a 'Lilith [Doe],' could you please forward it to me? There is an open investigation by the Anaheim Police department regarding the matter, and they would like to know if you received any messages."

23. In or about August 2016, defendant DIAZ caused to be deleted a personal email account used to communicate in furtherance of Count 1 and Count 2.

24. From on or about December 20, 2016, to on or about December 22, 2016, defendant DIAZ caused to be deleted a personal email account containing evidence of email communications transmitted in furtherance of Count 1, including, but not limited to, emails transmitted during Overt Act No. 7; and emails transmitted in furtherance of Count 2.

C. The Charge

25. From on or about December 20, 2016, to on or about December 22, 2016, in the Central District of California and elsewhere, the defendant, IAN R. DIAZ, knowingly destroyed, concealed, and covered up records and documents, namely the contents of his personal email account, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the

13

```
1  jurisdiction of a department and agency of the United States, namely,
2  the United States Marshals Service Office Professional
3  Responsibility, Internal Affairs, and in relation to and
4  contemplation of any such matter.
5
6       All in violation of 18 U.S.C. §§ 1519 and 2.
7
8                                      A TRUE BILL
9
10                                     _____/S/_____
                                       Foreperson
11
12
13  Corey R. Amundson
    Chief
14  Public Integrity Section, USDOJ

15  By: _____
    MARCO A. PALMIERI
16  Senior Litigation Counsel
    Public Integrity Section, USDOJ
17
18  By: _____
    REBECCA G. ROSS
19  Trial Attorney
    Public Integrity Section, USDOJ
20

21  John Lynch
    Chief
22  Computer Crime & Intellectual
    Property Section, USDOJ
23
24  By: _____
    MONA SEDKY
25  Senior Trial Attorney
    Computer Crime & IP Section,
26  USDOJ
27
28
                                14
```