COREY R. AMUNDSON
Chief, Public Integrity Section, U.S. Department of Justice
MARCO A. PALMIERI (D.C. Bar No. 981788)
Senior Litigation Counsel
Public Integrity Section, U.S. Department of Justice
REBECCA G. ROSS (N.Y. Bar No. 5590666)
Trial Attorney
Public Integrity Section, U.S. Department of Justice
MONA SEDKY (D.C. Bar. No. 447968; Cal. Bar No. 170147 (inactive))
Senior Trial Attorney
Computer Crime & IP Section, U.S. Department of Justice

    U.S. Department of Justice, Public Integrity Section
    1301 New York Ave. NW, Floor 10
    Washington, DC 20530

    Telephone:  (202) 285-4233 (Palmieri)
              (202) 573-2698 (Ross)
              (202) 262-7122 (Sedky)
    E-mail:    marco.palmieri@usdoj.gov
             rebecca.ross2@usdoj.gov
             mona.sedky@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 8:21-cr-00084-JLS |
| Plaintiff, | **GOVERNMENT'S TRIAL MEMORANDUM** |
| v. | Trial date:  March 9, 2023 |
| IAN R. DIAZ, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, hereby files the Government's Trial Memorandum in the above-captioned matter.

//

//

The Government's Trial Memorandum is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 8, 2023                    Respectfully submitted,

                                        Corey R. Amundson
                                        Chief, Public Integrity Section
                                        U.S. Department of Justice

                                        By:

                                            /s/ Mona Sedky

                                            Mona Sedky
                                            Senior Trial Attorney
                                            Computer Crime & IP Section
                                            U.S. Department of Justice

                                            Rebecca G. Ross
                                            Trial Attorney
                                            Public Integrity Section
                                            U.S. Department of Justice

                                            Marco A. Palmieri
                                            Senior Litigation Counsel
                                            Public Integrity Section
                                            U.S. Department of Justice

                                            Attorneys for Plaintiff
                                            UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

THE FACTS EXPECTED TO BE PROVEN AT TRIAL...........................1

I.   Diaz and His Relationship with Jane Doe ......................1

II.  The May-July 2016 Cyberstalking Scheme to Frame Jane Doe .....5

  A.   Diaz's Motives and His Brief Relationship with Connell.....5

  B.   The Cyberstalking Scheme ..................................5

    1. Opening Bogus Online Accounts .............................6

    2. Posing as "Lilith"/Jane Doe and Sending Death and Rape Threat
    Emails to Themselves.........................................6

    3. Posing as "Lilith"/Jane Doe and Responding to Craigslist Rape
    Fantasy Posts to Lure Men to Condo...........................7

    4. Posing as "Lilith"/Jane Doe and Posting to Craigslist Rape
    Fantasy Posts to Lure Men to Condo...........................8

    5. Jane Doe is Arrested and Jailed Pending Prosecution .......9

  C.   Evidence of Diaz's Role in the Scheme and His Concealment..9

  D.   Jane Doe's Resulting Emotional Distress...................10

THE EVIDENCE EXPECTED TO BE PRESENTED AT TRIAL....................10

I.   The Witnesses ...............................................10

II.  The Exhibits ...............................................12

POTENTIAL EVIDENTIARY ISSUES.....................................12

I.   Diaz's Statements Are Not Hearsay When Offered by The
Government ......................................................12

II.  Statements Using the Pseudonym "Lilith" Are Admissible ......13

III. Diaz's Self-Serving Out-of-Court Statements are Hearsay .....14

IV.  Implied Assertions by the Defendant Constitute Hearsay ......17

V.   Statements Between L.C. and Diaz are Not Hearsay. ...........19

VI.  Emails from the Lilithistruth and IanRDiaz Accounts are Not
Hearsay Insofar as They Will Not be Offered for their Truth......21

VII. Diaz's False Statements Are Admissible to Prove the Charged
Conduct and to Show Consciousness of Guilt.......................22

VIII.  Condo Dispute Dispute Evidence Is Not Hearsay ............. 23

IX.  The TROs that Diaz Obtained against Jane Doe are Not Hearsay  24

X.   Jane Doe's Statements to USMS-IA and APD Are Not Hearsay .... 25

**TABLE OF AUTHORITIES**

Cases

*Bakst v. Cmty. Mem'l Health Sys., Inc.*, 2011 WL 13214315, at *33
  (C.D. Cal. Mar. 7, 2011) ........................................ 24

*Chestnut v. Ford Motor Co.*, 445 F.2d 967, 972 (4th Cir. 1971) ...... 19

*Clemmons v. Strona*, 2021 WL 6496776, at *4 (C.D. Cal. Aug. 13,
  2021) ........................................................... 24

*E.E.O.C. v. Evans Fruit Co.*, 2013 WL 1703537, at *4 (E.D. Wash. Apr.
  19, 2013) ....................................................... 24

*Fischer v. Travelers Commer. Ins. Co.*, 2015 U.S. Dist. LEXIS 182101,
  at *6, at *7 (C.D. Cal. Dec. 15, 2015) ...................... 20, 25

*Grove Fresh Distributors, Inc. v. New England Apple Products Co.,
  Inc.*, 969 F.2d 552, 556 (7th Cir. 1992) ......................... 17

*Jackson v. Cnty. of San Bernardino*, 2016 U.S. Dist. LEXIS 184177, at
  *15 (C.D. Cal. July 5, 2016) .................................... 25

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life
  Activists*, 290 F.3d 1058, 1083 (9th Cir. 2002), *as amended* (July
  10, 2002) ....................................................... 22

*Raiser v. City of Temecula*, 2019 U.S. Dist. LEXIS 63628, at *76 (C.D.
  Cal. Feb. 11, 2019) ............................................. 25

*Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1154 (9th Cir.
  2000) ........................................................... 23

*United States v. Adams*, 722 F.3d 788, 829-30 (6th Cir. 2013) ....... 16

*United States v. Arrington*, 618 F.2d 1119, 1126 (5th Cir. 1980) .... 13

*United States v. Arrington*, 618 F.2d 1119, 1126 (5th Cir. 1980),
  *cert. denied*, 449 U.S. 1086 (1981) ............................ 14

*United States v. Barragan*, 871 F.3d 689, 705 (9th Cir. 2017) ....... 20

*United States v. Bellucci*, 995 F.2d 157, 161 (9th Cir. 1993) ....... 23

*United States v. Boekelman*, 594 F.2d 1238, 1240 (9th Cir. 1978)....23

*United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004).......25

*United States v. Candoli*, 870 F.2d 496, 508 (9th Cir. 1989)........22

*United States v. Cesario-Ayala*, 576 F.3d 1120, 1129-30 (10th Cir.
   2009) ......................................................14

*United States v. Collins*, 90 F.3d 1420, 1428 (9th Cir. 1996).......21

*United States v. Connelly,* 395 Fed. Appx. 407, 408 (9th Cir.
   2010) ......................................................25

*United States v. Dupree*, 706 F.3d 131, 136-38 (2d Cir. 2013).......25

*United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988)..14, 15

*United States v. Foster*, 701 F.3d 1142, 1150-51 (7th Cir. 2012)....21

*United States v. Hackett*, 638 F.2d 1179, 1186-87 (9th Cir. 1980),
   *cert. denied*, 450 U.S. 1001, 101 S. Ct. 1709 (1981) ..............23

*United States v. Hernandez*, 176 F.3d 719, 727 (3d Cir. 1999).......17

*United States v. Jackson*, 88 F.3d 845, 847-48 (10th Cir. 1996).....19

*United States v. King*, 36 F.3d 728, 732 (8th Cir. 1994)............16

*United States v. Krug*, 666 F. App'x 665, 669 (9th Cir. 2016).......22

*United States v. Loftis*, 843 F.3d 1173, 1177-78 (9th Cir. 2016)....22

*United States v. Long*, 905 F.2d 1572, 1580 (D.C. Cir. 1990).......18

*United States v. Lopez*, 185 F.3d 870 (9th Cir. 1999)...............20

*United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982).............15

*United States v. Mitchell*, 502 F.3d 931, 965 (9th Cir. 2007).......15

*United States v. Oguns*, 921 F.2d 442, 448-49 (2d Cir. 1990).......14

*United States v. Ortega*, 203 F.3d 675, 679, 682 (9th Cir. 2000)....15

*United States v. Palma-Ruedas*, 121 F.3d 841, 857 (3rd Cir. 1996)...18

*United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004).........23

*United States v. Patrick*, 959 F.2d 991, 999 (D.C. Cir. 1992).......13

*United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991).... 20, 24

*United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991), *cert.*

   *denied*, 1112 S. Ct. 1598 (1992) ................................. 20

*United States v. Pelisamin*, 641 F.3d 399, 410 (9th Cir. 2011)...... 13

*United States v. Price*, 792 F.2d 994, 997 (11th Cir. 1986)......... 21

*United States v. Quinones-Chavez*, 641 F. App'x 722, 725 (9th Cir.

   2016) ...................................................... 14

*United States v. Rodriguez Lopez*, 565 F.3d 312 (6th Cir. 2009)..... 14

*United States v. Torres*, 794 F.3d 1053, 1059, 1060, 1061 (9th Cir.

   2015) ...................................................... 18

*United States v. Two Elk*, 536 F.3d 890, 901 (8th Cir. 2008)........ 16

*United States v. Valerio*, 441 F.3d 837, 844 (9th Cir. 2006)........ 20

*United States v. Waters*, 194 F.3d 926, 931 (8th Cir. 1999) ......... 15

*United States v. Waters*, 627 F.3d 345, 358 (9th Cir. 2010)..... 15, 19

*United States v. Whitman*, 771 F.2d 1348, 1352 (9th Cir.1985)....... 21

*United States v. Williams*, 604 F.2d 1102, 1108 (8th Cir.1979)...... 21

*United States v. Wood*, 550 F.2d 435, 442-43 (9th Cir. 1977)........ 23

*Williamson v. United States*, 512 U.S. 594, 599 (1994).............. 15

**Statutes**

18 U.S.C. § 2................................................... 1

18 U.S.C. § 371................................................. 1

18 U.S.C. § 1519................................................ 1

18 U.S.C. § 1621................................................ 1

18 U.S.C. § 2261A............................................... 1

**Other Authorities**

5-801 Weinstein's Federal Evidence § 801.11[5][a].................. 25

**Rules**

Fed. R. Evid. 801(d)(2)................................13, 15, 18, 21

Fed. R. Evid. 801(d)(2)(C)..........................................23

## MEMORANDUM OF POINTS AND AUTHORITIES

The four-count superseding indictment charges the defendant Ian R. Diaz ("Diaz") with conspiracy to commit cyberstalking, in violation of 18 U.S.C. § 371; substantive cyberstalking, in violation of 18 U.S.C. §§ 2261A and 2; perjury, in violation of 18 U.S.C. § 1621; and obstruction in violation 18 U.S.C. §§ 1519 and 2. Dkt. 28.  Trial is set to begin on March 9, 2023.

The charges stem from Diaz's participation in a cyberstalking scheme with his then-wife, Angela Connell, that framed his former fiancé, Jane Doe, for threatening and attempting to rape Connell. The defendant successfully caused Jane Doe to be charged with attempted rape, among other charges, and detained in Orange County Jail for 88 days, where she was facing a decades-long prison sentence.  Diaz is also charged with obstructing a federal investigation by deleting two personal email accounts in 2016.  Further, Diaz is charged with perjury for lying during his September 2019 sworn deposition, taken as part of the civil suit Jane Doe filed, in which he falsely testified that he had never accessed Connell's online accounts.

## THE FACTS EXPECTED TO BE PROVEN AT TRIAL

### I.   Diaz and His Relationship with Jane Doe

Before and during the relevant time period, as a deputy U.S. Marshal with the U.S. Department of Justice's U.S. Marshal's Service ("DOJ-USMS") in Los Angeles, Diaz received training regarding criminal investigations.  Evidence will also show that Diaz has a history of using Craigslist personals advertisements to find sexual partners and

1

of proposing and/or engaging in certain sexual activities relevant to the instant cyberstalking scheme, including encounters where he watched, recorded, and/or watched recordings of his female sexual partner having sex with another person and "rape fantasy" encounters.

Diaz and Jane Doe met in the summer of 2013. They later moved into together, and Diaz eventually suggested to Jane Doe that they purchase a $470,000 condominium in Anaheim, California (the "Condo"), which was under construction and would be ready for move-in in June 2015. Because Diaz could not contribute to the down payment, Jane Doe paid the full down payment and closing costs, totaling approximately $14,000. They moved into the Condo in June 2015 and split the mortgage payments. However, the evidence will show that eventually the relationship between Diaz and Jane Doe would end following a series of significant and escalating conflicts and strains.

Jane Doe is expected to testify that fairly early in their relationship and continuing throughout, conflicts arose over Diaz's sexual demands. Diaz pressured Jane Doe, which she repeatedly resisted, to engage in "cuckolding"--having sex with another man--while Diaz either recorded it himself or watched her recordings of it. Diaz told Jane Doe that he could arrange everything by finding a man on Craigslist and told Jane Doe that an ex-girlfriend had done this for him in the past. On occasion, Diaz sent Jane Doe links to Craigslist posts for men seeking sexual encounters. Despite Jane Doe's continued refusals, Diaz persisted with his requests. In mid-February 2014, Jane Doe relented to Diaz's continued pressure and agreed to Diaz's demands.

Subsequently, Diaz arranged for a strange man to come to Jane Doe's apartment, while she was intoxicated and on cold medicine.  The man had sex with Jane Doe, while Diaz hid in another room and recorded the sexual encounter using multiple recording devices he had set up beforehand in Jane Doe's bedroom.

Jane Doe is also expected to testify that the February 2014 cuckolding encounter was extremely traumatic for her.  In her view, she did not consent to the sexual encounter that Diaz had pressured her into having. She expressed this to Diaz many times thereafter.  She came to view this as a rape.  Jane Doe was also very concerned about Diaz's recording of the incident.  She repeatedly asked Diaz to destroy the recording.  Though Diaz initially assured Jane Doe that he deleted the recording, he later claimed that he still had it and watched it. Diaz continued to ask Jane Doe to have sex with other men, but Jane Doe refused.  The cuckolding incident and Diaz's recording of it, combined with Diaz's continued cuckolding demands, along with other incidents that strained their relationship, ultimately led to their eventual breakup.

Prior to the end of their relationship, Jane Doe became more vocal in her complaints about Diaz's making her have sex with another man and other aspects of his abuse.  She vocalized these complaints to Diaz and to others.  As she began sharing more with her friends and family, with their support and encouragement, Jane Doe made plans to end her relationship with Diaz permanently.

In late August 2015, Jane Doe ended the relationship with Diaz

3

and moved out of the Condo. Evidence will show that in early September 2015, Jane Doe began communicating more openly about her experiences with Diaz—both to Diaz himself and to others. For example, Jane Doe notified her graduate school personnel about her concerns about Diaz, who in turn notified Diaz that he was not allowed on campus.  On September 10, 2015, Jane Doe sent another email to Diaz from her verified Gmail account, which referred to the rape incident and accused Diaz of being unfaithful during their relationship.  In the text of this email, Jane Doe included biblical references and a specific reference to "Lillith." Jane Doe will testify that the language used in this latter email was out-of-character for her and, in her view, resulted from her having a post-traumatic stress episode resulting from her relationship with Diaz. The next day, on September 11, 2015, in the first of a series of events of Ian Diaz involving the courts and local law enforcement, Diaz filed an application for a Temporary Restraining Order ("TRO") against Jane Doe, attaching several of the e-mails.  The TRO was not granted.  At or around the same time, he complained to APD that Jane Doe was harassing him.

As noted, Jane Doe moved out of the Condo in late August 2015, just a few months after she and Diaz had moved in.  Evidence will show that from September-October 2015, she attempted on her own to resolve the transfer of the Condo's ownership to Diaz. When a resolution could not be reached, both Diaz and Jane Doe hired property attorneys, who negotiated a settlement agreement. The evidence will further show that ultimately Diaz did not honor the negotiated agreement, and a legal

dispute ensued that resulted in Jane Doe's filing a formal civil lawsuit. The evidence will also show that there were several key dates during the Condo dispute that overlapped with the cyberstalking scheme.

## II.   The May-July 2016 Cyberstalking Scheme to Frame Jane Doe

### A. Diaz's Motives and His Brief Relationship with Connell

As the Condo dispute wore on, although Diaz was eager to remain in the Condo, financial evidence will show that it became clear that he could not afford to do so. Evidence will further show that Diaz was also growing troubled by Jane Doe's increasingly public accusations that Diaz had raped and abused her.  It was at this time, in January 2016, that Diaz began dating Connell.  Within a few weeks of meeting Connell, Diaz proposed marriage.  Shortly thereafter, they married and Connell moved into the Condo that was the subject of his ongoing property dispute with Jane Doe. Against this backdrop, the evidence will show that Diaz and Connell initiated, and then executed, a complex cyberstalking scheme with the objective of framing Jane Doe for criminal conduct that Diaz and Connell perpetrated against themselves.

### B. The Cyberstalking Scheme

The evidence will show that Diaz and Connell: (1) posed as Jane Doe and sent emails to themselves threatening to kill and rape Connell; (2) solicited, and then lured, men they found through Craigslist "personal" advertisements to engage in a "rape fantasy" with Connell, in an attempt to stage a non-consensual sexual assault on Connell; (3) staged one or more hoax sexual assaults and hoax attempted sexual assaults on Connell; (4) repeatedly reported the conduct to local law

enforcement, falsely claiming that Jane Doe was responsible for it and was placing Connell's life in danger; 5) repeatedly asked and caused the Anaheim Police Department and the Orange County District Attorney's Office to arrest and charge Jane Doe with the attempted rape of Connell, and (6) ultimately caused local authorities to detain Jane Doe in jail for approximately 88 days.

### 1. Opening Bogus Online Accounts

The evidence will show that Diaz and Connell, using VPNs among other tools, first established various fake online accounts to use in the scheme. These included email accounts, social media accounts, and Craigslist accounts. They selected account names that appeared to be linked to Jane Doe, to make it look like Jane Doe was the one controlling the accounts and therefore sending communications from the accounts.

### 2. Posing as "Lilith"/Jane Doe and Sending Death and Rape Threat Emails to Themselves

The government expects the evidence to show that in the first phase of their scheme to frame Jane Doe, in late May to early June 2016, Diaz and Connell used the bogus Jane Doe accounts they created to send themselves e-mail messages with graphic threats to rape, injure, and kill Connell. Several of the e-mails they sent themselves also contained attachments with graphic photographs depicting injured and dead women, babies, and fetuses. To make it look like Jane Doe was the sender, they also signed many of the messages with Jane Doe's first name, last name, or other names or phrases associated with her,

including "Lilith" in reference to the phrase Jane Doe included in her September 2015 email to Diaz.  Similarly, they included other language Jane Doe used in some of her prior communications with Diaz, including biblical references and accusations about Diaz. Diaz and Connell used these so-called threats as a basis to obtain temporary restraining orders ("TROs") against Jane Doe and then repeatedly advocated to police, both in person when police were called to the Condo and through emails sent to APD detectives, that they arrest Jane Doe for violating the TROs and endangering Connell's life.

### 3. Posing as "Lilith"/Jane Doe and Responding to Craigslist Rape Fantasy Posts to Lure Men to Condo

The evidence will show that Diaz and Connell became frustrated with APD's lack of response and escalated their scheme to have Jane Doe arrested. Specifically, in June 2016, they searched in the Craigslist personals/casual sexual encounters section for men who were seeking a "m4w" (men for—or seeking--women) "rape fantasy" or similar types of casual sexual encounters with women.  Again using the counterfeit Jane Doe accounts they created, Diaz and Connell responded to several of these male Craigslist rape fantasy posters.  In their responses, Diaz and Connell provided the Condo address, sometimes Connell's photographs and Connell's and/or Diaz's cell phone numbers, and encouraged the Craigslist posters to come to the Condo for a rape fantasy, ostensibly with Connell.

For example, the evidence will show that on June 13, 2016, Connell called APD and claimed that one of the Craigslist men that Jane Doe

communicated with on Craigslist had come to the Condo.  APD officers arrived at the Condo, with a police helicopter hovering above, and found the defendant outside the front door of the Condo, with his USMS badge around his neck and his unholstered firearm in his hand. Once on scene, Diaz then blamed Jane Doe for responding to the Craigslist rape fantasy advertisements and sending the men to the Condo. When speaking to APD officers on scene, the defendant repeatedly claimed, as captured on the officers' body-worn-camera footage, that Connell's life was in danger, and even alluded that he might have fired his weapon on one of the men sent to the Condo from Craigslist. As it happened, the evidence will show that Diaz had communicated with the Craigslist poster, identified by the initials V.C., and had successfully lured him to the front gate of the Condo building that night.

### 4. Posing as "Lilith"/Jane Doe and Posting to Craigslist Rape Fantasy Posts to Lure Men to Condo

The evidence will also show that in late June 2016, Diaz and Connell shifted from responding to Craigslist ads to also include posting their own "rape fantasy" solicitations in the "w4m" (women for men) section of Craigslist.

Diaz and Connell used the bogus email accounts to communicate with men on Craigslist in a continued campaign to lure men to the Condo, and then call APD to report the incidents, as well as forward multiple emails to APD detectives and police during this time. Ultimately, their efforts led to Jane Doe being arrested and eventually held in jail pending prosecution.

### 5. Jane Doe's Arrests and Detention

On June 24, 2016, Connell called APD and claimed that one of the Craigslist men that Jane Doe had communicated with had come to the Condo and sexually assaulted Connell.  APD officers arrived at the Condo, interviewed Connell, and arrested Jane Doe later that same night.  On July 13, the evidence will show that Diaz and Connell successfully lured one of the Craigslist men, who at the time was 17-years old, to the Condo to engage in a sexual encounter.  At the same time, they were in contact with APD detectives to ensure that APD was at the Condo at the same time. APD confronted and detained the 17-year-old for questioning.  APD arrested Jane Doe again the next day, July 14. Following her second arrest, Jane Doe was held in jail for 88 days before she was eventually exonerated.

### C. Evidence of Diaz's Role in the Scheme and His Concealment

The evidence at trial will establish that Diaz conspired with Connell and participated in the cyberstalking scheme, including, but not limited to, by:  (1) luring individual Craigslist posters to the Condo; (2) forwarding fake threats (whether emails or Craigslist communications) to APD, sometimes posing as Connell when doing so and sending them from Connell's e-mail account; (3) altering some of the fake threatening emails before sending them to APD officers; (4) falsely claiming that Jane Doe posed a danger to Connell and Diaz; and (5) demanding, often while referring to his status as a deputy U.S. Marshal, that APD arrest, charge, and incarcerate Jane Doe. The evidence at trial will also show that Diaz repeatedly lied to APD and

while testifying under oath during his civil deposition in 2019.  The defendant also deleted two of his email accounts used in the scheme; changed his phone number used in the scheme multiple times; and wiped his cell phone used in the scheme.  The evidence will further show that the defendant took these latter steps with the knowledge of an impending investigation at the USMS.

### D. Jane Doe's Resulting Emotional Distress

As a result of Diaz and Connell's cyberstalking campaign, Jane Doe was falsely accused of committing serious crimes, arrested twice and remained in custody for 88 days.  The evidence will show that Jane Doe suffered substantial emotional distress as a result.

<b>THE EVIDENCE EXPECTED TO BE PRESENTED AT TRIAL</b>

## I.   The Witnesses

Jane Doe will testify at trial about her personal background, her relationship with Diaz in 2013-2015, and about various salient events and aspects of that relationship, including the pressure Diaz placed on her to participate in a cuckolding sexual encounters, the 2014 cuckolding incident, their break-up, and the Condo dispute.  She will also describe the cyberstalking campaign, her arrests and the impact, emotional and otherwise, the cyberstalking campaign inflicted on, and continues to inflict, on her.  The government further intends to call a few of the men who communicated with Connell and the defendant in response to Craigslist postings, ostensibly to arrange sexual encounters at the Condo.  It also intends to call a former Craigslist employee who will explain about Craigslist's authorization process and

business records from 2016. The government intends to call two of Diaz's prior sexual partners. They are expected to testify about the defendant's prior experiences in proposing and engaging in sexual encounters, using Craigslist, involving third-parties and in proposing "rape fantasy" sexual encounters. The government further expects to call a number of law enforcement witnesses at trial, including one or more special agents from the Department of Justice Office of Inspector General ("OIG"), who will discuss the government's investigation in this case, including evidence obtained through forensic analysis. The government also expects to call APD officers and detectives involved in the initial APD investigation, as well as officials from the USMS, including USMS witnesses with knowledge of the USMS IT networks, the defendant's personnel background, and his administrative investigations. The government may also call FBI Special Agent Richard Busick to offer expert testimony about historical cell site and location data provided in AT&T phone records obtained through the course of this investigation.

The government also intends to call one of Jane Doe's attorneys involved in her federal civil rights lawsuit and one of her attorneys involved in the Condo dispute. Finally, the government may call Connell, who will testify about the cyberstalking scheme to frame Jane Doe. In addition to her role in the scheme, Connell will discuss Diaz's knowledge of and participation in the scheme. She will also discuss Diaz's access to, and use of, her devices and accounts.

The government and the defendant have negotiated multiple

stipulations.  The government anticipates that it may still need to call several authentication witnesses.

## II.   The Exhibits

The government intends to introduce several categories of exhibits, including, but not limited to, the following: (1) the threatening e-mails and Craigslist rape fantasy communications, including attachments; (2) Diaz's e-mail and text communications with APD, USMS, Jane Doe and her lawyers, Connell, and others; (3) audio and video recordings (and transcripts thereof) from body-worn-camera and recorded phone calls of Diaz and Connell's interactions with APD; (4) documents related to the Condo dispute; (5) Diaz's TRO applications and attachments; (6) Diaz's financial records; (7) excerpts from Diaz's deposition transcript and statements to APD; (8) files found on Diaz's electronic devices, including emails, text messages, contacts, browser cookies, temporary word files, recents logs, and deleted items; (9) court filings from the state civil suit relating to the property dispute and from the federal civil rights lawsuit filed by Jane; (11) provider records; and(12)summary charts and demonstratives.

<u>POTENTIAL EVIDENTIARY ISSUES</u>

## I.   Diaz's Statements Are Not Hearsay When Offered by The Government

The government intends to offer statements by the defendant, made in a variety of contexts, using a variety of methods, and to different people, including Jane Doe, Connell, his former sexual partners, his friend L.C., APD officers, the Craigslist men, and in documents he authored.  As the defendant in this matter, Diaz's statements are party

admissions and are not hearsay. Fed. R. Evid. 801(d)(2); *see also United States v. Pelisamin*, 641 F.3d 399, 410 (9th Cir. 2011) (defendant's TV and media phone interviews were not hearsay because the Government offered them as statements of a party-opponent).

## II.   Statements Using the Pseudonym "Lilith" Are Admissible

The government expects that Diaz will argue that he was not the sender of the "Lilith" and other similar bogus emails. Whether or not Diaz was, at all times, "Lilith" has no bearing on the admissibility of the emails. First, the government is not seeking to enter these statements for the truth of the matter asserted, so it need not establish that they were made by Diaz, the party-opponent. They largely consist of threats and Craigslist rape fantasy communications. Second, the emails are highly relevant, precisely because the government is using them for the purpose of proving his identity. *United States v. Patrick*, 959 F.2d 991, 999 (D.C. Cir. 1992) ("hav[ing] no difficulty" in denying a hearsay objection to a receipt introduced to prove an item belonging to defendant was found in same room as cocaine and weapon); *United States v. Arrington*, 618 F.2d 1119, 1126 (5th Cir. 1980) (holding utility bills found during search of house admissible to prove defendant resided there), *cert. denied*, 449 U.S. 1086 (1981). The emails will also prove Diaz's relationship with his co-conspirator, Connell. Statements used to demonstrate a relationship between parties, including co-conspirators, rather than for the truth of the matter asserted, are not hearsay. *See United States v. Cesario-Ayala*, 576 F.3d 1120, 1129-30 (10th Cir. 2009)(holding statement "I've got your

money" was not hearsay when offered to show relationship between speaker and defendant); *United States v. Rodriguez Lopez*, 565 F.3d 312 (6th Cir. 2009)(calls to defendant asking for heroin not hearsay when offered to circumstantially prove participation in conspiracy, irrespective of truth); *United States v. Oguns*, 921 F.2d 442, 448-49 (2d Cir. 1990)(holding that the question "Have the apples arrived there?" was not hearsay when offered as circumstantial evidence of conspiracy).

**III.   Diaz's Self-Serving Out-of-Court Statements are Inadmissible Hearsay**

As the Ninth Circuit has noted, "plac[ing] [a defendant's] statement [ ] before the jury without subjecting [him] to cross-examination [ ] is exactly what the hearsay rule forbids." *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988); *see also United States v. Quinones-Chavez*, 641 F. App'x 722, 725 (9th Cir. 2016) (unpublished) ("If Quinones wished to communicate his version of events, he could have testified.")

Diaz may attempt to offer statements he made that appear exonerative. These might include, for example, statements to Connell, APD and others, at the time of the scheme, that he claimed to believe Jane Doe was responsible for the threatening emails, and believed she was putting Connell's life in danger.  The government contends that Diaz intentionally made these false statements as part of the scheme. Moreover, while the government may introduce some of these false statements to demonstrate the defendant's role in the scheme, the

14

defendant is precluded from introducing such statements because if Diaz offers them, he would be doing so to establish the truth of the matter asserted. Diaz cannot rely on Fed. R. Evid. 801(d)(2) because, as its proponent, the evidence is not being offered against him. *See, e.g., United States v. Mitchell*, 502 F.3d 931, 965 (9th Cir. 2007); *United States v. Ortega*, 203 F.3d 675, 679 (9th Cir. 2000); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988). "The self-inculpatory statements, when offered by the government, are admissions by a party-opponent and are therefore not hearsay, *see* Fed. R. Evid. 801(d)(2), but the non-self-inculpatory statements are inadmissible hearsay." *Ortega*, 203 F.3d at 679. A defendant cannot admit his own out-of-court statements through someone else*. See United States v. Waters*, 627 F.3d 345, 358 (9th Cir. 2010)(holding that a statement by the defendant to a relative, "I am innocent", was "clearly hearsay"); *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982); *United States v. Waters*, 194 F.3d 926, 931 (8th Cir. 1999). Diaz's "non-self-inculpatory statements are inadmissible even if they were made contemporaneously with other self-inculpatory statements." *Ortega*, 203 F.3d at 682 (citing *Williamson v. United States*, 512 U.S. 594, 599 (1994)). Simply stated, the admissibility of a falsely exculpatory statements, like statements of a party-opponent, is at the government's option, not Diaz's.

The defense should also be prevented from slipping in Diaz's self-serving statements for a supposedly non-hearsay purpose that's mere pretext. *See United States v. Two Elk*, 536 F.3d 890, 901 (8th Cir. 2008) (abuse of discretion to allow agent to testify about alternative

15

suspect's denial of culpability on the "fairly flimsy rationale" of showing why FBI did not investigate him). If the defense admits an out-of-court, self-serving statement on the basis that it's not for the truth of the matter asserted (e.g., "effect on the listener"), it would be improper to then turnaround and utilize the statement in closing argument for its self-serving purpose. *Cf. United States v. Adams*, 722 F.3d 788, 829-30 (6th Cir. 2013) (finding that government's closing argument did not reference complaints of elections violations admitted as non-hearsay for the improper purpose of proving vote-buying). To prevent this, the Court should be wary of any non-hearsay arguments to admit statements by Diaz with an obvious self-serving purpose. And if such statements are admitted, the Court should disallow the defense from utilizing the statements for their self-serving purpose during closing argument and give a limiting instruction. *See United States v. King*, 36 F.3d 728, 732 (8th Cir. 1994) (expressing concern over lack of limiting instruction that jury was to consider testimony only purpose for which it was admitted and not it for the truth of the matter asserted).

Along similar lines, Defendant may attempt to offer texts purporting to show his care and concern for Connell under the state of mind exception to the rule against hearsay. This, too, should not be allowed, because the exception doesn't apply where the proponent's true purpose is to prove the truth of the underlying facts asserted. *See United States v. Hernandez*, 176 F.3d 719, 727 (3d Cir. 1999) ("[S]tatements that are considered under . . . the 'state of mind'

16

exception, cannot be offered to prove the truth of the underlying facts asserted." (internal citation omitted)); *Grove Fresh Distributors, Inc. v. New England Apple Products Co., Inc.*, 969 F.2d 552, 556 (7th Cir. 1992). "[T]he scope of this [state of mind] exception must be limited to prevent it from devouring the rule." *Id.* Here, the defendant's statements of his purported belief that Connell was pregnant and was legitimately in danger would be offered as mere pretext. Their true purpose would be to show their truth---namely, that the defendant believed Jane Doe, not Diaz and Connell, was behind the cyberstalking scheme.

## IV.   Implied Assertions by the Defendant Constitute Hearsay

The defense may also attempt to pass off certain statements with implied assertions as non-hearsay. For example, the government suspects that the defense will attempt to portray Diaz as having been duped by Connell during the relevant time period. In one text sent after she supposedly tricked him into believing she was pregnant, Diaz messaged UCC—1, asking Connell about her pregnancy. At first blush, this appears as a non-assertive question, but the obvious, implied assertion is that Diaz believed Connell was pregnant.

"It is widely recognized that the grammatical form of a verbal utterance does not govern whether it fits within the definition of hearsay." *United States v. Torres*, 794 F.3d 1053, 1060 (9th Cir. 2015). The Ninth Circuit has held that "while some questions may constitute non-hearsay, where the declarant intends the question to communicate an implied assertion and the proponent offers it for this intended

message, the question falls within the definition of hearsay." *Id.* at 1059. "Because there may be instances where a party attempts to admit hearsay by cloaking statements under the guise of a question, the focus of the inquiry should be on what the declarant intended to say, whether implied or directly asserted."  *Id.* at 1061; *see also United States v. Palma-Ruedas*, 121 F.3d 841, 857 (3rd Cir. 1996); *cf. United States v. Long*, 905 F.2d 1572, 1580 (D.C. Cir. 1990) ("[T]he crucial distinction under rule 801 is between intentional and unintentional messages, regardless of whether they are express or implied."). In *Torres*, the Ninth Circuit held that the trial court properly excluded a non-testifier's questions to the defendant offered for the implied assertion that he had been set up in a drug importation scheme.  *Id.* In *Palma-Ruedas*, the Third Circuit upheld the exclusion of the defendant's statement "Nice to meet you" when offered by the defendant as evidence that he and a second person had not met.  *Id.*  The court concluded that use of the statement was improper because "statements offered to support an implied assertion are inadmissible hearsay."  *Id.*

Here, similarly, admitting a solicitous text messages by the defendant asking Connell about her pregnancy are offered for no other purpose but *implicitly* asserting that Diaz believed Connell was pregnant. This would be no different than admitting a text message in

which he's *explicitly* asserting, "I know you're pregnant." Both are self-serving[1] hearsay that should be excluded.[2]

## V.   Statements Between L.C. and Diaz are Not Hearsay.

The government also intends to admit Diaz's text exchange with his friend, L.C. Diaz's texts in the exchange are party admissions, and L.C.'s responses will be offered not for the truth of the matter asserted, but rather for the effect on the listener and for context.[3]

For example, the government intends to offer the following exchange between Diaz and L.C., which followed a call from Detective Cunha, who investigated Connell and Diaz for their role in the underlying scheme. In the exchange, Diaz and Carlson reveal their

---

[1] To be sure, "[w]hether self-serving, neutral, or disserving, a hearsay statement that does not fit within one of the exceptions to the hearsay rule is inadmissible," and "'self-serving' is a misnomer that ought to be interred." *Chestnut v. Ford Motor Co.*, 445 F.2d 967, 972 (4th Cir. 1971). The self-serving nature of the statements that the government anticipates the defense will seek to admit is not important because it makes them any more or less hearsay, but rather, because it belies the nonhearsay bases on which they may be offered.

[2] As another example, Defendant may attempt to admit text messages he sent describing Connell as "crazy," and argue that he is not seeking to admit those messages to show that she actually was crazy. But he would be trying to admit this for the obvious, implied assertion that he believed she was crazy. The court should exclude this hearsay, or, at the very least, forbid him to then argue it to the jury for the truth of the implied assertion that he believed Connell to be crazy.

[3] These two bases for admissibility are sufficient in their own right. But, in addition, to the extent that L.C. messaged Diaz with questions, such messages are non-assertive. *See United States v. Jackson*, 88 F.3d 845, 847-48 (10th Cir. 1996) (not hearsay where an unidentified person messaged the defendant's confiscated pager and asked a police officer, "Is this Kenny?"); *see also See United States v. Waters*, 627 F.3d 345, 358 (9th Cir. 2010) (holding that an imperative statement is a nonassertion, not offered to prove the truth of the matter asserted).

19

concern about Detective Cunha's investigation, including the following:

- L.C.: "he didn't ask to set up time for your phone?"
- Diaz: "no, I was waiting for it"
- L.C.: "ok good,"
- Diaz: "having heart palpitations from that short phone call"
- L.C.: "I think it's good that he didn't ask . . . don't you"
- Diaz: "yes and no, I can see why jenn wants to talk to him so bad"
- L.C.: "what did you decide on that?  You let her?  Or wait?"
- Diaz: "Waiting till he asks".
- L.C.: "good"

"An out-of-court statement offered to show the effect on the listener, rather than the truth of the matter asserted, is not hearsay." *Fischer v. Travelers Commer. Ins. Co.*, 2015 U.S. Dist. LEXIS 182101, at *7 (C.D. Cal. Dec. 15, 2015) (citing *United States v. Lopez*, 185 F.3d 870 (9th Cir. 1999) [published in full-text format at 1999 U.S. App. LEXIS 13197]); *see also United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991) (holding statement was non-hearsay where "it was introduced to show the effect on the listener" and "to explain the circumstances under which her denial of the molestation took place"), *cert. denied*, 1112 S. Ct. 1598 (1992); *United States v. Barragan*, 871 F.3d 689, 705 (9th Cir. 2017) (holding that "the informant's statements on the tapes were not hearsay because, as the court instructed the jury, they were offered only for context, not for the truth of the matter asserted."); *United States v. Valerio*, 441 F.3d 837, 844 (9th Cir. 2006) ("Nothing the undercover informant said would be considered by the jury for its truth, but only to give context to what [the defendant] said, under the admonition."); *United States v. Whitman*,

771 F.2d 1348, 1352 (9th Cir.1985) (same, when tape recorded statements introduced to aid jury in understanding defendant's statements).[4]

To the extent that Diaz's statements are being offered for the truth of the matter asserted to demonstrate evidence of a guilty conscience (e.g., that he was "having heart palpitations"), they are admissible as statements of a party-opponent and highly relevant. Fed. R. Evid. 801(d)(2); *see also United States v. Collins*, 90 F.3d 1420, 1428 (9th Cir. 1996) (evidence of defendants' attempts to induce witnesses to lie is indicative of consciousness of guilt and is admissible).

## VI.   Emails from the Lilithistruth and IanRDiaz Accounts are Not Hearsay Insofar as They Will Not be Offered for their Truth

Diaz perpetrated his cyberstalking of Jane Doe using false threats and fake Craigslist lures.  These threats and Craigslist posts are not being admitted for the truth of the matter asserted.  Quite the opposite, the government contends that Diaz and Connell fabricated threats to deceive law enforcement and fabricated the Craigslist posts

---

[4]   *See also United States v. Foster*, 701 F.3d 1142, 1150-51 (7th Cir. 2012) ("The admission of recorded conversations between informants and defendants is permissible where an informant's statements provide context for the defendant's own admissions."); *United States v. Price*, 792 F.2d 994, 997 (11th Cir. 1986) (statements admitted "to make understandable to the jury the statements made by" the defendant); *United States v. Williams*, 604 F.2d 1102, 1108 (8th Cir.1979) ("the tape recorded conversation was not hearsay because it was admitted to provide context for [the defendant's] end of the conversation.").

to deceive would-be partners in consensual rape fantasies.   Threats and Craigslist posts admitted for this purpose are not hearsay. *See also United States v. Krug*, 666 F. App'x 665, 669 (9th Cir. 2016) (unpublished) ("The effect of a purportedly threatening statement on the listener or recipient, and the listener's reaction, is highly relevant" and not hearsay); *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1083 (9th Cir. 2002), *as amended* (July 10, 2002) (testimony that the FBI and Justice Department considered anti-abortion posters to be "serious threats" admissible to show physicians' state of mind in response).

**VII.   Diaz's False Statements Are Admissible to Prove the Charged Conduct and to Show Consciousness of Guilt.**

The government plans to introduce Diaz's repeated lies to law enforcement and under oath at his deposition. Because he is charged with obstruction of justice and perjury, these lies are admissible, inextricably intertwined evidence. *See United States v. Loftis*, 843 F.3d 1173, 1177-78 (9th Cir. 2016) (explaining that evidence is inextricably intertwined when it 1) "constitutes a part of the transaction that serves as the basis for the criminal charge" or 2) is necessary "to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.") They are also highly relevant: the Ninth Circuit has repeatedly held that false exculpatory statements may be admissible as circumstantial evidence tending to show consciousness of guilt. *See United States v. Candoli*, 870 F.2d 496, 508 (9th Cir. 1989); *United States v. Hackett*,

22

638 F.2d 1179, 1186-87 (9th Cir. 1980), *cert. denied*, 450 U.S. 1001, 101 S. Ct. 1709 (1981); *United States v. Boekelman*, 594 F.2d 1238, 1240 (9th Cir. 1978); *United States v. Wood*, 550 F.2d 435, 442-43 (9th Cir. 1977).

## VIII.   Condo Dispute Dispute Evidence Is Not Hearsay

The government intends to offer documents and communications related to the property dispute between Diaz and Jane Doe, including a property agreement.  Documents with significance independent of their content, or those that determine the rights of parties, do not constitute hearsay.  *See United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004) ("[O]ut-of-court statements that are offered as evidence of legally operative verbal conduct are not hearsay."); *Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1154 (9th Cir. 2000) (holding that insurance policy was "excluded from the definition of hearsay . . . because it is a legally operative document that defines the rights and liabilities of the parties in this case."); *United States v. Bellucci*, 995 F.2d 157, 161 (9th Cir. 1993) (holding certificate of insurance was not hearsay because it memorialized the legal relationship between the insurer-the FDIC-and the insured-the financial institution).

The government also intends to admit emails to Diaz from Jane Doe's attorneys.[5]  These emails are being admitted to prove Diaz was

---

[5] The government may also seek to admit emails from the defendant's attorney to Jane Doe's attorneys, which the government submits are admissible under Rule 801(d) (2) (C), which states a statement is not

23

put on notice about certain actions related to the property dispute as well as to explain defendant's subsequent actions. Therefore, they too are not hearsay. *See Clemmons v. Strona*, 2021 WL 6496776, at \*4 (C.D. Cal. Aug. 13, 2021) ("If an out-of-court statement is not introduced for the truth of the matter asserted, but to establish the effect on the listener or a basis in fact for the listener's subsequent actions, the statement is not hearsay.") (citing *Payne, supra*, 944 F.2d at 1472)). Even where the out-of-court statement contains an allegation against a litigant, the statement is nonetheless admissible where its relevance lies in the fact the statement was made and its effect, rather than its content. *See, e.g., Bakst v. Cmty. Mem'l Health Sys., Inc.*, 2011 WL 13214315, at \*33 (C.D. Cal. Mar. 7, 2011) (admitting statement by Chief Counsel to the Office of the Inspector General that individuals should be held accountable for healthcare fraud as alternative explanation for plaintiff's inability to find employment); *E.E.O.C. v. Evans Fruit Co.*, 2013 WL 1703537, at \*4 (E.D. Wash. Apr. 19, 2013) (holding that out of court statements relayed to a sexual harassment claimant regarding similar acts of harassment in the workplace may be admissible for the purpose of showing the effect on the claimant).

## IX.   The TROs that Diaz Obtained against Jane Doe are Not Hearsay

The government also intends to enter various TRO orders and applications that Connell and Diaz applied for and/or obtained against

---

hearsay when offered "against an opposing party and was made by a person whom the party authorized to make a statement on the subject."

Jane Doe.  The TRO served as an important step in Diaz's efforts to have Jane Doe charged and arrested for, among other things, violating the TRO.  The TRO is not being offered for the truth of the matter asserted.  Indeed, the assertions that Connell and Diaz made in the TRO applications and in the attached communications are largely false. The TRO is not hearsay when admitted for this purpose.  *See* 5-801 Weinstein's Federal Evidence § 801.11[5][a];  *United States v. Dupree*, 706 F.3d 131, 136-38 (2d Cir. 2013); *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004).

**X.   Jane Doe's Statements to USMS-IA and APD Are Not Hearsay**

The government intends to admit statements by Jane Doe to USMS-IA and APD alleging that Diaz framed her. Reports to these investigative bodies provided Diaz's incentive to cover up his actions and provide evidence of Diaz's motive to obstruct justice.  As discussed above, statements offered to show effect on the listener are not hearsay. This can include allegations of wrongdoing which prompt actions in response.  *See, e.g., United States v. Connelly,* 395 Fed. Appx. 407, 408 (9th Cir. 2010); *Raiser v. City of Temecula*, 2019 U.S. Dist. LEXIS 63628, at *76 (C.D. Cal. Feb. 11, 2019); *Fischer v. Travelers Commer. Ins. Co.*, 2015 U.S. Dist. LEXIS 182101, at *6 (C.D. Cal. Dec. 15, 2015); *Jackson v. Cnty. of San Bernardino*, 2016 U.S. Dist. LEXIS 184177, at *15 (C.D. Cal. July 5, 2016). Such was the case here, as Jane Doe's allegations prompted responses from USMS-IA, APD, and most importantly, Diaz.

//

Respectfully submitted,

Corey R. Amundson
Chief, Public Integrity Section

By:

*/s/ Rebecca G. Ross*
Rebecca G. Ross
Trial Attorney
Public Integrity Section,
U.S. Department of Justice

Marco A. Palmieri
Senior Litigation Counsel
Public Integrity Section,
U.S. Department of Justice

Mona Sedky
Senior Trial Attorney
Computer Crime & IP Section,
U.S. Department of Justice

Attorneys for Plaintiff
UNITED STATES OF AMERICA