# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>IAN DIAZ,<br><br>　　　　　　　　Defendant. | Case No. SACR 21-00084-JLS<br><br>**ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL (DOC. 250)** |

This matter is before the Court on Defendant's Motion for Judgment of Acquittal or, in the alternative, Motion for a New Trial. (Doc. 250.) The Motion is fully briefed. (*See* Docs. 251 (Opp.) & 252 (Reply).) This Motion was heard on May 5, 2023. For the reasons set forth herein, the Court DENIES Defendant's Motion.

## I. BACKGROUND

On March 23, 2023. Defendant was convicted as to all counts charged in the First Superseding Indictment ("FSI"). (*See* Doc. 233 (Verdict).) Specifically, Defendant was convicted of conspiracy to engage in cyberstalking in violation of 18 U.S.C. § 371, a substantive count of cyberstalking in violation of 18 U.S.C. § 2261A, perjury in violation of 18 U.S.C. § 1621, and obstruction of justice in violation of 18 U.S.C. § 1519.

Defendant moves for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c). Alternatively, Defendant moves for a new trial pursuant to Federal Rule of Criminal Procedure 33(a). In the sections that follow, the Court considers each.

## II. MOTION FOR JUDGMENT OF ACQUITTAL

### A. Rule 29 Legal Standard

Federal Rule of Criminal Procedure 29 permits a court to "set aside the verdict and enter an acquittal" after the jury has returned a guilty verdict. Fed. R. Crim. P. 29(c)(2). In considering a Rule 29 motion, the relevant question is whether "after viewing the evidence in the light most favorable to the prosecution, . . . any rational trier of fact [could have found] the essential elements of the crime[s] beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (cleaned up). The court "must bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *United States v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977) (quotation marks omitted). Where evidence is capable of supporting two or more "'conflicting inferences,' a reviewing court 'must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"

*United States v. Del Toro-Barboza*, 673 F.3d 1136, 1143 (9th Cir. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)).

### B. Conspiracy and Cyberstalking

The Court instructed the jury as to all elements of conspiracy and stalking. (*See* Doc. 226, Final Jury Instr. at 28-29, 31-32.) Briefly, those include, as to conspiracy: (1) within a specified time period, the existence of an agreement to commit a charged offense, (2) Defendant's membership in the conspiracy including knowledge of an object of the conspiracy and the intent to help accomplish the object, and (3) the commission of an overt act by any member of the conspiracy for the purpose of carrying out the conspiracy. (*Id.* at 28.) As to stalking, (1) use of an electronic service or system that satisfies the interstate or foreign commerce requirement, (2) to engage in a course of conduct causing, attempting to cause, or reasonably expected to cause substantial emotional distress to the victim, and (3) with the intent to harass or intimidate the victim. (*Id.* at 31.)

The defense in this case was that the unindicted co-conspirator, Angela Connell ("Connell"), acted alone, without involvement from Defendant. (*See* Mot. at 5.) Defendant offers interpretations of evidence admitted at trial that support inferences of his lack of guilt. (*See* Mot. at 9-10 (discussing how Defendant's accessing of Connell's iCloud account to report harassment of Connell, including pretending to be Connell in certain communications, was "consistent with innocence"); *id.* at 10-11 (arguing that details of Defendant's relationship with Michelle Hadley in threatening communications were consistent with Connell's authorship because Connell would have known these details and the details were not within the exclusive knowledge of Defendant); *id.* at 11-12 (arguing that Defendant's copying of and "cutting-and-pasting" of communications to forward to the Anaheim Police Department, which also included Defendant pretending to be Connell in certain communications, did not establish that Defendant knew that the threats to Connell were fake (and thus, this action was not indicative of Defendant's participation in the conspiracy)); *id.* at 12-13 (positing "other reasonable interpretations" regarding the "overlap in communication threads between the Craigslist men and Mr. Diaz and the

Craigslist men and Lilithistruth" that showed the existence of "innocent explanations" for this evidence); *id.* at 13 (arguing that Defendant's use of the phrase "come on up" did not necessarily indicate Defendant's knowledge that a Craigslist man would be traveling northward to meet Connell); *id.* at 13-14 (arguing that evidence of the use of Defendant's personal phone to authenticate a "rape fantasy" advertisement did not necessarily establish that he, not Connell, used his electronic devices to authenticate the advertisement); *id.* (raising similar argument regarding evidence that Defendant's work phone was used to access the "Lacey account login"); *id.* at 15 (arguing that Defendant's and Connell's shared use of the app "Wickr" to facilitate encrypted communications was not traceable to any particular time period).)

Some or all of Defendant's explanations may be plausible, but his arguments ignore the relevant legal standard. The Court's role in considering a Rule 29 motion is not to evaluate the evidence of record to search out inferences supporting Defendant's innocence; to the contrary, where there are both inculpatory and exculpatory inferences to be drawn from the same evidence, the Court "must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution." *Jackson*, 443 U.S. at 326.

Defendant cites a Third Circuit case in an attempt to cast the relevant standard in a different light. Defendant quotes *United States v. Gibbs*, 190 F.3d 188, 197 (3rd Cir. 1999): "The facts must support a 'reasonable and logical inference, that the activities of the participants . . . could not have been carried on *except as* the result of a preconceived scheme or common understanding' (emphasis added)." (Mot. at 8 (quoting *Gibbs*, 190 F.3d at 197).) From this, Defendant argues that the evidence must show that his "conduct could not have been carried on 'except as' a conspiracy," that is, if there is a reasonable inference to be drawn that does not support the existence of a conspiracy, the Court must disregard that evidence in assessing the sufficiency of the guilty verdict. (*See* Mot. at 8-9.)

The Court rejects this argument as inconsistent with the Rule 29 standard. Indeed, the Third Circuit itself has expressly rejected the notion that *Gibbs* in any way alters the Rule 29 standard. *See United States v. Smith*, 294 F.3d 473 (3d Cir. 2002). Specifically, in

*Smith*, the Third Circuit reversed the district court's ruling that granted a Rule 29 motion as to a conspiracy count, reinstating the jury's guilty verdict. *Id.* at 480. The district court's reasoning, based on *Gibbs*, was that "that the jury verdict could not stand because there [were] other plausible explanations for the officers' conduct than a preconceived scheme or common understanding . . . and there [was] no evidence to support the *Gibbs* requirement of a reasonable and logical inference that the officers' activities could not have been carried on except as the result of a preconceived agreement or understanding." *Smith*, 294 F.3d at 477 (cleaned up). The Third Circuit reversed, noting that the district court "misapprehend[ed] the holding in *Gibbs* and fail[ed] to give the appropriate deference to the jury's verdict." *Id.* The Third Circuit limited the reach of *Gibbs* to establishing *a* permissible manner of proving the existence of a conspiracy rather than the *only* method of doing so. *Id.* at 477-78. The *Smith* court took note of the use of the permissive "can" (as opposed to the mandatory "must") in the full quote from *Gibbs*, which reads: "The existence of a conspiracy can be inferred from evidence of related facts and circumstances from which it appears as a reasonable and logical inference, that the activities of the participants could not have been carried on except as the result of a preconceived scheme or common understanding." *Gibbs*, 190 F.3d at 197 (internal alteration marks and quotation marks omitted). The *Smith* court also noted that it "did not ask in *Gibbs*, nor in any case since *Gibbs*, whether there was a plausible, non-conspiratorial explanation for a defendant's actions." *Smith*, 294 at 477-78. Instead, the *Smith* court observed that the district court should have applied the Rule 29 standard that requires that all evidence be viewed in the light most favorable to the prosecution. *Id.*

Thus, Defendant's interpretation of *Gibbs* is untenable. Therefore, the Court rejects Defendant's arguments that it should consider innocent inferences that could be drawn from the evidence admitted at trial. Instead, the Court applies the Rule 29 standard as set forth above. That standard results in a denial of Defendant's Motion as to the conspiracy and cyberstalking charges. Here, viewed in a light most favorable to the prosecution, the

evidence admitted at trial is sufficient to establish each of the elements of both conspiracy and cyberstalking. (*See generally* Opp. at 3-11.)

      C. **Perjury**

The elements of perjury may be stated as willfully making a false material statement while testifying under oath, where materiality is defined as having a natural tendency to influence or being capable of influencing a factfinder and where willfully is defined as having acted deliberately and with knowledge of the falsity of one's testimony. (*See* Final Jury Instr. at 35.)

Defendant contends that there is insufficient evidence that he acted deliberately and with knowledge of the falsity of his statement. Defendant argues that, in the context of the civil case, he could have misunderstood the relevant question posed to him as asking whether he accessed Connell's accounts *without her authorization to do so*. (*See* Mot. at 16-17.) To the extent that the evidence could be said to support this inference, it is merely an alternative inference that could be drawn from the evidence and is rejected for the same reason that Defendant's arguments in the preceding section are rejected. Moreover, the record does not support the inference argued by Defendant. The question was asked twice; it was clear, simple, and concise. Defendant's answer of "no" was equally concise. (*See* Opp. at 12.) When asked if he had ever forwarded an email from Connell's email account, Defendant first said "no," but then immediately corrected himself to say he had forwarded emails from Connell that Connell had forwarded to him, a correction that further reinforced his statement that he had not accessed Connell's accounts directly.

Defendant also contends the statement was not material. (Mot. at 16.) The standard for materiality is not high, the Government need only establish that the statement had a natural tendency to influence or was capable of influencing a factfinder. Here, there was evidence that in the civil case, in support of a motion for summary judgment, Defendant argued he had not participated in creating any of the false threats to Michelle Hadley. (*See* Doc. 220, Mar. 16, 2023 Trial Tr. at 1083.) There is also evidence that Defendant's accessing of Connell's accounts would have tended to weaken Defendant's arguments in

support of summary judgment; counsel in the civil case testified that had Defendant answered "yes" instead of "no" to accessing Connell's account, "we would have had more evidence to support our belief and our assertion, which was that Mr. Diaz had accessed the accounts. So it would have been helpful to bolster our argument." (*Id.* at 1086.) This is evidence of materiality. (*See also id.* at 1086-90 (counsel's further testimony regarding what she would have done if Defendant had answered "yes").) It does not matter whether the falsity *actually influenced* the court's decision in the civil matter. What matters is whether the statement is *capable of influencing* a factfinder. Testimony used by counsel to formulate their arguments on summary judgment falls into this category; that such testimony is considered by a court in determining whether to grant or deny summary judgment also falls into this category.

Thus, the evidence admitted at trial is sufficient to sustain a conviction as to perjury. (*See* Opp. at 11-14.) Viewed in a light most favorable to the prosecution, there was sufficient evidence introduced at trial as to each of the elements of this offense, including Defendant's deliberate action in giving false testimony and the materiality of that testimony.

### D.   Obstruction of Justice

Defendant's argument regarding the obstruction of justice conviction fares no better. Obstruction of justice, in this context, requires only that a defendant alters, destroys, conceals, or falsifies a record, document or tangible object, and that he does so with the intent to impede, obstruct, or influence an actual or contemplated federal investigation.

Defendant argues that the deletion of his email accounts and changes to his personal cell phone numbers could be explained as responses to violations of his privacy and to the fact that he was a victim, not a perpetrator. (*See* Mot. at 17.) This is, again, merely a different inference that could have been, but was not, accepted by the jury.

Defendant also argues a lack of evidence as to whether he had knowledge of any ongoing internal affairs investigation. (*Id.*) But the evidence introduced at trial showed that an investigation had been opened as a result of the charged conduct, and that

Defendant knew, or at least suspected, that Michelle Hadley had made complaints to the United States Marshals Service. (*See* Opp. at 15-16.) The evidence also established that Defendant had before been the subject of an internal affairs investigation that had been initiated by a citizen complaint. This evidence supports an inference that Defendant understood he was or would be under investigation. Evidence introduced at trial supports the inference that, in an attempt to impede, obstruct, or influence such an investigation, Defendant destroyed (or attempted to destroy) evidence that might overwise have been uncovered.

Thus, when viewed in a light most favorable to the prosecution, there was sufficient evidence introduced at trial as to each of the elements of this offense.

### III. MOTION FOR NEW TRIAL

#### A. Legal Standard

Under Federal Rule of Criminal Procedure 33, a conviction may be vacated and new trial may be granted when the "interest of justice so requires." Fed. R. Crim. P. 33(a). For example, a new trial is warranted where the evidence weighs heavily against the verdict. *See United States v. Alston*, 974 F.2d 1206, 1211-12 (9th Cir. 1992). The decision whether to grant a motion for a new trial lies within the sound discretion of the trial court. *See United States v. Krasny*, 607 F.2d 840, 845 (9th Cir. 1979). Thus, the Court's power to grant a new trial is broader than its power to grant a motion for acquittal because the Court "is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000). However, the Court's discretion is not unconstrained, and the Court may grant a new trial only if it finds that "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." *Id.* (internal quotation marks omitted).

#### B. Connell's Invocation of Her Fifth Amendment Privilege

Defendant's unindicted co-conspirator Connell was called by the defense but did not testify; instead, her counsel indicated that she would assert her Fifth Amendment privilege

against self-incrimination as to a number of categories of anticipated inquiry by the defense.[1] This, in turn, caused the Court to exclude her testimony.

Where a criminal defendant's right to compulsory process to secure the attendance of a witness collides with that witness's Fifth Amendment privilege against self-incrimination, the witness's invocation of the privilege prevails. *United States v. Moore*, 682 F.2d 853, 856 (9th Cir. 1982). The privilege against self-incrimination applies broadly, not only to evidence which may directly support a criminal conviction but also to that "information which would furnish a link in the chain of evidence that could lead to a prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Maness v. Meyers*, 419 U.S. 449, 461 (1975). Nevertheless, there must be "substantial hazards of self-incrimination" that are "real and appreciable" rather than "imaginary and unsubstantial." *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir. 1980) (internal quotation marks omitted). This standard is met where a witness believes her truthful testimony at trial would contradict earlier sworn testimony and subject her to perjury charges. *United States v. Whittington*, 783 F.2d 1210, 1218 (5th Cir. 1986) (cited with approval in *United States v. Vavages*, 151 F.3d 1185, 1192 n.3 (9th Cir. 1998)).

Generally, a witness may not make a "blanket assertion" of the privilege, and must instead assert the privilege document-by-document and/or question-by-question. *See United States v. Brown*, 918 F.2d 82, 84 (9th Cir. 1990). However, in certain instances, a court may exclude a witness's testimony entirely. This situation occurs because a criminal defendant is not entitled to call a witness where that witness "will merely be invoking his Fifth Amendment right not to testify." *United States v. Espinoza*, 578 F.2d 224, 228 (9th Cir. 1978). To determine whether this situation will occur, the district court may conduct an evidentiary hearing and/or hear argument from counsel regarding the scope of the witness's intent to assert the privilege and, where all relevant questions are expected to go

---

[1] Notably, the witness was not proffered by the defense as a witness with knowledge of the conduct underlying the charges here. This is despite her obvious personal knowledge of the charged events, given her guilty plea to state charges based on the charged conduct.

unanswered, may exclude the witness's testimony in its entirety. *See United States v. Klinger*, 128 F.3d 705, 709-10 (9th Cir. 1997).

Here, the Court heard argument from counsel, including counsel for the witness, and determined that the witness would invoke the privilege as to all relevant topics identified by the defense. Connell admittedly had a role in the charged scheme; she pleaded guilty to numerous state charges and served her sentence before being called to testify. Of particular significance here, Connell gave statements under oath to federal authorities regarding the charged conduct. According to her counsel, the main concern regarding Connell testifying at trial was whether such testimony would subject her to perjury charges due to inconsistencies between trial testimony and her prior sworn statements, which reportedly totaled approximately 750 pages. (*See* Doc. 239, Mar. 21, 2023 Trial Tr. at 1459.)

Defendant argues the following topics were outside the scope of her prior sworn testimony and therefore the privilege (as based on a fear of prosecution for perjury) would not apply: (1) the timing of Connell's relationship with Defendant; (2) her 2014 fabrication that she had cervical cancer; (3) another 2014 fabrication that involved Connell falsely representing she was a lawyer; and (4) the factual basis underlying Connell's guilty plea to state charges based on the conspiracy and cyberstalking charged here.

As to the first and second topics, counsel expressly indicated he would advise Connell not to testify and to instead invoke her Fifth Amendment privilege.[2] (*See id.* Mar. 21, 2023 Trial Tr. at 1480.) Counsel so indicated because Connell was questioned regarding these topics extensively under oath previously, and counsel was concerned that any inconsistent testimony could lead to her prosecution for perjury. (*Id.*) As to the fourth topic, the factual basis for Connell's guilty pleas, this topic hits at the heart of the conduct about which Connell's counsel was concerned as being possibly inconsistent with her

---

[2] Additionally, as to the second topic, the Court noted that Connell's testimony would be cumulative, as a number of witnesses testified regarding the 2014 scheme, and there was no suggestion in the trial that Connell did not misrepresent that she had cervical cancer. (*Id.* at 1487-88.)

earlier statements under oath to investigators.[3] As such, counsel would also advise Connell to invoke her Fifth Amendment privilege as to this topic as well. (*See id.* at 1467, 1470.)

As to the third topic, the Court excluded evidence regarding this topic as irrelevant, distinguishing it from evidence regarding the 2014 fabrication that she had cervical cancer (which was admitted) on the basis that the pretending-to-have-cancer scheme had a *modus operandi* similar to that charged in this case. (*Id.* at 1468.)

Thus, the procedure followed by the Court revealed that the privilege would have been properly invoked as to the first, second, and fourth topics. The third topic was excluded on other grounds. In this manner, the exclusion of Connell's testimony does not establish a basis for granting a new trial under the relevant standard.

C. **Compelled Grant of Immunity from Prosecution**

Defendant takes issue with the Government's failure to grant immunity to Connell, an action which he contends would have facilitated Connell's testimony. But Defendant did not ask that the Government grant immunity to the witness. Defendant correctly argues that had Connell received a grant of immunity from the Government, or if the Court compelled a grant of immunity, Connell likely would have been able to testify without fear of prosecution. (*See* Mot. at 20-25.) However, for the reasons stated below, the failure to grant Connell immunity does not warrant a new trial.

First and foremost, Defendant's argument fails because he did not expressly seek immunity for the witness either before trial or during trial. For a Court to compel a grant of immunity for a defense witness, the defendant must first request that the Government grant immunity and be refused. See *United States v. Garner*, 663 F.2d 834, 840 (9th Cir. 1981). Only after that refusal may a defendant petition the district court for a grant of immunity for that witness. *Id.* The closest defense counsel came to seeking immunity on behalf of

---

[3] Moreover, Defendant did not proffer the factual basis underlying the plea as an area of testimony at trial. (*Cf. id.* at 1462 (seeking admission of the felony abstract of judgment).)

11

the witness[4] was when counsel asked whether the Government "at this moment intend[ed] to prosecute Ms. Connell for perjury if she were to perjure herself?"[5] (Mar. 21, 2023 Trial Tr. at 1485.) This is not a request for a grant of immunity. Counsel also did not ask that the Court compel immunity. Thus, the failure to seek immunity for the witness is a separate and independent reason for denying Defendant's Motion for a New Trial on this basis.

Moreover, the failure to request such immunity appears to be purposeful. From its familiarity with the record, the Court determines this was not a mere oversight by defense counsel but was instead a strategic decision. In the time leading up to trial, defense counsel repeatedly (and correctly) pointed out that the Government had been equivocal as to whether it would call Connell to testify, while simultaneously taking what action it needed to preserve the ability to call her to testimony. Defense counsel clearly understood that the Government might not call Connell, and made arrangements to secure her appearance for the defense if the Government did not call her. As early as January 2023, Defendant sought the issuance of an out-of-district subpoena for Connell. Ultimately, Connell appeared pursuant to the Government's subpoena power, which the Court, before trial, ordered it to exercise on behalf of the defense when the defense encountered difficulty in serving her. In light of the strong possibility that Defendant, and not the Government, would call Connell as a witness, there was sufficient time to address the issue of a grant of immunity in advance of trial, had Defendant wanted to request it. Thus, it appears to the Court that the failure to seek immunity was meant to enable the defense to have Connell testify only as to matters other than the conduct underlying the present charges. Put succinctly, had immunity been granted, Connell would have been free to testify as to the conduct underlying the present charges, including Defendant's involvement in the scheme, without fear of further prosecution. It appears that Defendant hoped to walk a tightrope by calling

---

[4] In responding to the Government's argument that defense counsel did not request immunity for the witness, defense counsel merely pointed out that counsel for the witness sought and was denied immunity. (*See* Reply at 6 n.1; *accord*, Mar. 21, 2023 Trial Tr. at 1480.)
[5] Government counsel answered that he lacked the authority to answer that question. (*Id.*)

Connell to testify as to certain peripheral matters that he hoped were unimplicated by Connell's Fifth Amendment privilege, while avoiding her testimony about Defendant's role in the scheme.

But even if Defendant had sought such immunity, the Court would not have compelled the Government to grant it. Defendant was appointed counsel the night before her testimony; her counsel sought (and was refused) immunity on her behalf. (Mar. 21, 2023 Trial Tr. at 1480 ("I have sought assurances from the United States that they would not prosecute her for [inconsistent statements].").) Relying on *Williams v. Woodford*, 384 F.3d 567 (9th Cir. 2004) and *United States v. Straub*, 538 F.3d 1147 (9th Cir. 2008), Defendant contends he is entitled to a new trial based on the Government's failure to grant immunity.

In *Straub*, the Ninth Circuit considered whether the district court should have compelled the prosecution to grant a witness use immunity, applying the standard set forth in *Williams* as to whether the refusal to voluntarily grant such immunity effected a violation of defendant's due process right to a fair trial. Under *Williams*, "the prosecution's refusal to grant use immunity to a defense witness denies the defendant a fair trial only when (1) the witness's testimony would have been relevant, and (2) the prosecution refused to grant the witness use immunity with the deliberate intention of distorting the fact-finding process." *Williams*, 384 F.3d at 600. The *Straub* court refined the second prong of this test, noting that prosecutorial misconduct—in the form of the intent to "distort[] the fact-finding process"—is not required: "[T]he defendant need not prove that the prosecution acted intentionally to distort the fact-finding process where the other elements of the *Williams* test are met." *Straub*, 538 F.3d at 1161.

In *Straub*, the Ninth Circuit ordered a new trial where the prosecution granted use immunity to its witnesses but denied use immunity to a defense witness. *Id.* at 1166. Retrial was ordered to vindicate the defendant's "due process right to a trial in which the fact-finding process has not been distorted," which the court found occurred under the facts of that case. *Id.* at 1161, 1166.

No such retrial is required here. As to the first prong of the *Williams* test, the witness clearly had personal knowledge relevant to this case. But under *Williams*, the Court's focus is on whether "the witness's testimony *would have been* relevant." *Williams*, 384 F.3d at 600 (emphasis added). This requires consideration of what testimony "would have been" elicited by the defense. Defense counsel did not proffer the areas of examination into which she would have inquired had immunity been granted. Instead, it was witness counsel who identified a list of topics that were purportedly identified by defense counsel, and these topics were limited to whose identified as likely to fall outside the scope of the privilege.

Specifically, at the hearing that took place outside the presence of the jury (Mar. 21, 2023 Trial Tr. at 1453-91), although defense counsel argued that Connell's testimony was relevant to Defendant's third-party perpetrator defense that identified Connell as that perpetrator, the record does not reveal any intention by defense counsel to question Connell directly about the conduct underlying the charged conspiracy. Instead, counsel for the witness referred to a list of five topics (and the transcript reveals discussion of a total of eight topics): (1) the witness's statements to her employer which, in context, are her false statements in 2014 that she had cancer; (2) her guilty plea and state-court conviction; (3) the witness's false statement regarding being pregnant with twins in 2016; (4) the witness's misrepresenting herself as an attorney; (5) the witness's use of Defendant's credit card without his consent in 2016; (6) the witness's "relationship dynamics with Mr. Diaz from 2015 to 2016"; and (7) "the interactions or lack of interactions between [the witness] and [the victim]" and the witness's "feelings or emotions in terms of motives toward [the victim]"; and (8) the witness's involvement in assisting with the civil litigation regarding the property dispute. (*See id.* at 1457-59, 1469, 1471, 1475).

The present Motion advances only topics (1), (2), (4), and (6) as necessitating a new trial. (*See* Mot. at 18-19.) The Court excluded evidence regarding topic (4) as irrelevant. Topics (1), (2), and (6) were addressed through other evidence, such that Connell's testimony on these topics would have been cumulative and of minimal relevance.

Nevertheless, assuming the relevance of topics (1), (2), and (6), the second prong of the *Williams* test is clearly not met.

To meet the second prong, the defense "must show that the prosecution intentionally caused a defense witness to invoke the Fifth Amendment right against self-incrimination," *Williams*, 384 F.3d at 600, or that there was a distortion of the fact-finding process as a result of the failure to grant the witness immunity, *Straub*, 538 F.3d at 1161.  Here, Defendant contends that the Government caused Connell's counsel to reconsider whether to advise his client to invoke the Fifth Amendment privilege by refusing to provide assurances that Connell would not be prosecuted for perjury charges.  (*See* Mot. at 25.)

At the outset of the hearing, counsel for the witness noted that he would advise invocation of the privilege as to "the events leading up to this prosecution," but that topics that appeared on a list from defense counsel were acceptable.[6]  (Mar. 21, 2023 Trial Tr. 1454-55.)  Nevertheless, he reiterated that any "wander[ing] into the subject matter of this litigation and the events underlying it" would result in invocation of the privilege.  (*Id.* at 1455.)  Counsel was consistent on this point throughout.  (*See, e.g., id.* at 1467.)  And while the relevant limitations periods as to crimes that occurred during the time period of the charged conspiracy (approximately eight years ago) had expired as to certain federal crimes, Connell testified to federal authorities under oath as late of July 12, 2019, leading to the potential of criminal prosecution for perjury based on inconsistencies between trial testimony and her prior sworn statements.  (*See id.* at 1459; *see also* Opp. 22 n.3 (identifying materials sent by the Government to counsel for the witness).)

As was clear during the hearing on the matter, given the short lead time available to review the matter after his appointment, witness counsel's initial position was formulated on only a rudimentary understanding of the present case.  To the extent his position changed as he learned more about the case, this is understandable and, on this record, is not fairly attributable to actions of the prosecution.  Moreover, it appears that witness counsel

---

[6] That list was not made part of the record.

1  may have been operating under a fundamental misunderstanding of Federal Rule of
2  Evidence 607, which allows any party, including the party calling a witness, to impeach
3  that witness.  *See* Fed. R. Evid. 607 ("Any party, including the party that called the witness,
4  may attack the witness's credibility."); (*cf.* Mar. 21, 2024 Trial Tr. at 1479 ("My
5  understanding is a party cannot attack the credibility of a witness they put on except in
6  extreme circumstances, which I imagine don't exist here.").)  After the Court cleared up
7  that misunderstanding, counsel immediately expressed the concern that an attack on
8  credibility could "reopen the doors [the Court] already closed on direct." (*Id.*)  Then, after
9  a short break, witness counsel reported that he would advise the witness to invoke her Fifth
10 Amendment privilege as to the remaining issues identified in the hearing. (*See id.* at 1479-
11 80.)

On this record, the Court concludes that the Government did not intend to distort the fact-finding process.  At most, in addition to indicating the lack of authority to state whether the Government would prosecute the witness for perjury if her testimony was inconsistent with prior sworn statements, Government counsel merely provided materials to Connell's counsel and made accurate representations in open court that aided Connell's counsel's assessment as to whether and to what extent Connell would be exposed to the risk of criminal prosecution as a result of her trial testimony.

The Court also concludes that the fact-finding process was not itself distorted.  As noted, Defendant did not proffer Connell as a witness to the charged conduct.  And the evidence identified by Defendant in the present Motion was admitted through other witnesses or evidence, or it was excluded by the Court as irrelevant.

Thus, the *Williams* test (as modified by *Straub*) is not met, and a new trial is not necessary to vindicate Defendant's Fifth Amendment due process right to a fair trial.  *See Straub*, 538 F.3d at 1161.

### D.   Court's Refusal to Give CALCRIM 224 Instruction

Defendant proffered Judicial Council Of California Criminal Jury Instruction 224 ("CALCRIM 224") as a proper instruction for the jury. (*See* Doc. 193, Joint Prop'd Jury

Instr. at 76-77, Disputed Instr. No. 1.)  The Government objected, and the Court declined to give this instruction.  (Mar. 21, 2023 Trial Tr. at 1361-62.)

CALCRIM 224 provides:

> Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt.
>
> Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable.

*Id.*  This instruction derives from California case law.  The Bench Notes regarding CALCRIM 224 cite California Supreme Court cases going back to at least 1955 supporting this instruction, including a duty to give this instruction *sua sponte* where "the prosecution substantially relies on circumstantial evidence to establish any element of the case."  *Id.* (citing, *inter alia*, *People v. Yrigoyen*, 45 Cal.2d 46, 49 (1955).)

Federal law treats circumstantial evidence differently and does not require that a jury follow this California rule.  *See Holland v. United States*, 348 U.S. 121, 139 (1954) (rejecting argument that would require "the trial judge to instruct that where the Government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt"); *accord People v. Livingston*, 53 Cal. 4th 1145, 1167 (2012) ("The federal Constitution itself does not require courts to instruct on the evaluation of circumstantial evidence where . . . the jury properly was instructed on reasonable doubt.") (cleaned up).  Thus, the federal approach is to instruct on reasonable doubt and

rely on that instruction rather than on an instruction such as CALCRIM 224. *See Holland*, 348 U.S. at 139.

That is what the Court did here. In addition to instructing on reasonable doubt, the Court gave the jointly proposed Ninth Circuit Model Instruction twice; once as a preliminary instruction and again at the close of trial just before the case was submitted to the jury. *See* Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit (2022), Instr. 1.5 & 6.8. The Ninth Circuit Model Instruction states:

> Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is indirect evidence, that is, it is proof of one or more facts from which you can find another fact.
>
> You are to consider both direct and circumstantial evidence. Either can be used to prove any fact. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

Model Instr. 6.8, Direct and Circumstantial Evidence; *see also id.*, cmt. ("The Committee believes that an instruction on circumstantial evidence generally eliminates the need to explain the same principle in terms of inferences."); *id.*, Introductory Cmt. to Chap. 3 ("General instructions on direct and circumstantial evidence and on credibility of witnesses should in most instances suffice, obviating the need for more specific instructions."). The Model Instruction derives from case law in the Supreme Court and the Ninth Circuit. *See, e.g., Holland*, 348 U.S. at 139; *United States v. Ramirez-Rodriquez*, 552 F.2d 883, 884 (9th Cir. 1977). In contrast, CALCRIM 224 misstates the law applicable to the present federal prosecution. The Court therefore properly declined to give this proposed instruction.

The Court also rejects Defendant's argument to the extent he tethers the "competing inferences" argument regarding CALCRIM 224 to the "competing inferences" argument based on *Gibbs*, discussed *supra*, in an apparent attempt to strengthen the present argument. (*See* Reply at 5 (noting that "[t]he government relied heavily on circumstantial evidence

that was all capable of an alternative reasonable interpretation supporting innocence" and contending that if the jury "had been instructed with CALCRIM 224, . . . the jury would have been required to accept *any* reasonable interpretation of the evidence that pointed towards innocence") (emphasis added).) Defense counsel reiterated this position at oral argument. It lacks merit. Because *Gibbs* contravenes the Rule 29 standard in the manner discussed above (and in *Smith*), and because CALCRIM 224 contravenes Supreme Court and Ninth Circuit law regarding the weighing of circumstantial evidence by the jury, this attempted tethering strengthens neither of Defendant's "competing inferences" arguments.

## IV. CONCLUSION

For these reasons, the Court DENIES Defendant's Motion.

**IT IS SO ORDERED.**

DATED: May 9, 2023

_____
HON. JOSEPHINE L. STATON
United States District Judge