LAW OFFICES OF KAREN L. GOLDSTEIN
Karen L. Goldstein (State Bar No. 229965)
1645 N. Vine Street, Suite 809
Los Angeles, CA 90028
Telephone: 888.445.6313
Facsimile: 323.467.7228
kgoldstein@klgcriminaldefense.com

Attorney for Defendant
IAN DIAZ

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>IAN DIAZ,<br><br>Defendant. | CASE NO. 8 CR 21-00084-JLS<br><br>**DEFENDANT'S SENTENCING POSITION; EXHIBITS IN SUPPORT**<br><br>**[REDACTED FOR PUBLIC FILING]**<br><br>Sentencing Date: June 30, 2023<br>Time: 1:00pm<br>Courtroom: 8A<br><br>**Before the Honorable Judge Staton** |

TO THE HONORABLE UNITED STATES DISTRICT JUDGE JOSEPHINE L. STATION FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND ASSISTANT UNITED STATES ATTORNEYS MARCO PALMIERI, REBECCA ROSS, MONICA SEDKEY:

Defense counsel, Karen L. Goldstein on behalf of Mr. Diaz, hereby submit Mr. Diaz's sentencing position. This position paper is based on the attached memorandum of points and authorities, the attached exhibits, all files and records in this case, and any further information as may be presented at the sentencing hearing.

Dated: June 16, 2023

*/s/ Karen L. Goldstein*
Attorney for Ian Diaz



LAW OFFICES OF KAREN L. GOLDSTEIN

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. RELEVANT § 3553(A) FACTORS ..... 2

A. Mr. Diaz's History and Characteristics ..... 2

1. [redacted] ..... 2

2. Mr. Diaz is a Devoted and Loving Father to His 5-Year-Old Son, Tristan ..... 3

3. Mr. Diaz Has No Prior Criminal History, Has Substantial Family and Friends Support, And is Unlikely to Re-Offend ..... 5

III. NATURE AND CIRCUMSTANCES OF THE OFFENSE ..... 6

A. The Majority of the Offense Conduct Occurred Seven Years Ago and Mr. Diaz Has Successfully Been Out on Supervised Release for the Past Two Years ..... 6

B. Michelle Hadley Has Already Received Some Compensation ..... 7

IV. FIVE YEARS IN PRISON SATISFIES ALL THE GOALS OF SENTENCING ..... 8

A. The Proposed Sentence Reflects the Seriousness of the Offense, Promotes Respect for the Law, and Imposes Just Punishment ..... 8

B. The Proposed Sentence Adequately Serves the Goals of General and Specific Deterrence ..... 8

C. The Proposed Sentence Avoids Unwarranted Sentencing Disparities ..... 10

V. REQUEST FOR A JUDICIAL RECOMMENDATION TO A SOUTHERN CALIFORNIA FACILITY AND OBJECTION TO SEVERAL SUPERVISED RELEASE CONDITIONS ..... 13

VI. CONCLUSION ..... 14

LAW OFFICES OF KAREN L. GOLDSTEIN

# TABLE OF AUTHORITIES

**Cases**

*Pepper v. United States*, 562 U.S. 476 (2011) ........ 7

*United States v. Edwards*, 595 F.3d 1004 (9th Cir. 2010) ........ 6

*United States v. Johnson*, 588 F. Supp. 2d 997 (S.D. Iowa 2008) ........ 7

*United States v. Wolf*, 699 F.3d 1082 (9th Cir. 2012) ........ 14

**Statutes**

18 U.S.C. §3553(a) ........ 1

18 USC § 3553(a)(6) ........ 10

**Other**

National Institute of Justice," *Five Things About Deterrence* (Sept. 2014), http://www.nij.gov/five-things/pages/deterrence.aspz, *available at*, https://ncjrs.gov/pdffiles1/nij/247350.pdf ........ 9

Valerie Wright, *Deterrence in Criminal Justice: Evaluating Certainty v. Severity of Punishment*, The Sentencing Project (2010) http://www.sentencingproject.org/doc/Deterrence%20Briefing%20.pdf ........ 9

LAW OFFICES OF KAREN L. GOLDSTEIN

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Mr. Diaz's life has changed significantly for the better since the offense conduct took place over seven years ago. Today, his life shows the hallmarks of stability and growth in several important ways which demonstrate that he will never be before this Court again. Mr. Diaz has been happily married for the past two years to his wife, Amy Woolum ["Amy"] (PSR, p35 ¶191; p36 ¶195). They are loving and supportive partners to one another. Amy's well-being, both emotionally and financially, will be greatly affected by any custodial sentence which may be imposed on Mr. Diaz. (PSR, p36 ¶195).

Over the past several years, Mr. Diaz has also been a loving and doting father to their five-year old son, Tristan. (PSR, p36 ¶193; ¶196). Mr. Diaz shares all the primary caretaker responsibilities with his wife and is an active and involved father in all the minutia of Tristan's day-to-day life from picking him up, or dropping him off at daycare, to preparing him meals, to playing with Tristan after school. (Exh. A, Letter from Amy Woolum). Unequivocally, Tristan will suffer the most negative adverse consequences should his father be taken away from him for a lengthy period of time during his formative years.

Therefore, in considering Mr. Diaz's personal history and characteristics under 18 U.S.C. §3553(a), a sentence consisting of five years in prison, with three years of supervised release, would be "sufficient, but not greater than necessary" to comply with the purposes of sentencing by reflecting the seriousness of the offense, promoting respect for the law, providing just punishment for the offense, serving as adequate deterrence, protecting the public, and avoiding unwarranted sentencing disparities. 18 U.S.C. §3553(a).

//

//



## II. RELEVANT § 3553(A) FACTORS

### A. Mr. Diaz's History and Characteristics

**1.**



[redacted]

[redacted]

[redacted].

**2. Mr. Diaz is a Devoted and Loving Father to His 5-Year-Old Son, Tristan**

[redacted]. [redacted] Mr. Diaz has made many mistakes along his path to adulthood; however, one thing which he has consistently gotten right is the way he loves and cares for his son, Tristan. For Mr. Diaz, Tristan is the focal point of his life and he would do anything to ensure that Tristan is well cared for and is supported both emotionally and financially.

As his own wife describes, "Ian is a loving and attentive father who is involved in all the daily activities of Tristan's life. He picks Tristan up from school almost every day, talks to him about his day, helps him with his homework, plays games with him and is even teaching him how to play chess. Tristan loves his dad very much." (Exh. A, Letter from Amy Woolum). She adds that Tristan relies heavily on Mr. Diaz for the million and one small things which a son looks to his father in order to grow and to learn, "He turns to his dad to learn about fixing things, asking science questions, finding out about cars, asking questions about God, learning about tools, all of the things little boys want to learn about from their dad." (Exh. A). Kathyrn Hull, a friend for over 23 years, describes how Mr. Diaz has, "worked tirelessly to emulate the values that he wants his son to imbued with: respect, honesty, integrity, and a strong sense of right and wrong." (Exh. A. Letter from Kathryn Hull); And Mr. Diaz's long term friend Mike Hatter, states that he is an "amazing father" who "wants and needs to be there for his family" (Exh. A, Letter from Mike Hatter).

Three years ago, Tristan suffered from a precancerous tumor and had to undergo major surgery. The tumor near his lymph node, and part of his lymph node, was removed. (PSR, ¶197). This was a very difficult time emotionally for Mr. Diaz and his wife. Mr. Diaz was by Tristan's side every step of the way and rarely left his hospital bed until he was well enough to be discharged. Mr. Diaz still becomes emotional when reflecting on his son's illness and remembering how brave Tristan was in the hospital before and after the surgery. To this day, Mr. Diaz remains extremely fearful that Tristan will suffer a reoccurrence of this cancer while he is serving his sentence and will be unable to be by his side to comfort him. (PSR, p36 ¶198).

Mr. Diaz's commitment and devotion to his family, and specifically his son Tristan, is a common theme throughout the attached character letters and a strong factor in favor of the proposed sentence. Nearly all of the letters discuss the type of incredible

LAW OFFICES OF KAREN L. GOLDSTEIN

father that Mr. Diaz is and how his loves and dedication to Tristan is appreciable and heartfelt.

Unequivocally, if Mr. Diaz were to serve a lengthy custodial sentence it will have a decidedly traumatic impact upon Tristan who would grow up without a nurturing father figure in his life. Mr. Diaz would be forced to miss so many important milestones in Tristan's life. Mr. Diaz's dedication to his family, and the devastating impact it will have upon Tristan, is another factor which mitigates in favor of the proposed sentence. As Amy most aptly writes, "We are a team, we both bring different ideals and values into Tristan's life" and "To lose…[Ian]…, for a number of years will be devastating to [Tristan]." As such, the need for Mr. Diaz's continued love and care for his young son Tristan supported the proposed sentence.

**3. Mr. Diaz Has No Prior Criminal History, Has Substantial Family and Friends Support, And is Unlikely to Re-Offend**

Prior to the instant offense, Mr. Diaz had no prior criminal history. Additionally, Mr. Diaz has former work colleagues, friends, and families who all support him and will foster his rehabilitation in and out of custody. Many have expressed that these convictions do not reflect the individual who Mr. Diaz is at his core. Two of his former work colleagues, have acknowleded the seriousness of the convictions, but still show their support for Mr. Diaz because the conduct is not representative of his true character. Raul Reyna writes, "Ian has huge support from his family and friends, and we will continue to support him as he serves his sentence." (Exh. A. Letter from Raul Reyna). Kevin Williams similarly states, "These charges are inconsistent with the person that I know Ian to be …I cannot say that I understand these charges, because I don't, but I do support Ian. I believe that it is highly unlikely that Ian will ever engage in, nor repeat the type of behavior that led to his conviction." (Exh. A. Letter from Kevin Williams).

Additionally, the offense conduct occurred under a series of unusual circumstances including him being in an unhealthy relationship with his ex-wife, Angela Connell. These specific past circumstances are unlikely to re-occur and are also in stark

LAW OFFICES OF KAREN L. GOLDSTEIN

contrast to his current situation. Currently, he has a supportive and stable marriage with his wife Amy, and his young son, Tristan. Mr. Diaz's family is the center of his world. Over the past several years, Mr. Diaz has found a place of emotional and relationship stability that he had never experienced before. As James Woolum, his father-in-law, has aptly stated, "The opportunities and responsibilities of marriage and parenthood have changed his focus and priorities in life." (Exh. A, Letter from James Woolum). Given all the positive changes which have occurred in his life, Mr. Diaz is unlikely to find himself before this Court again. In conclusion, Mr. Diaz's lack of criminal history, along with support from his family and friends as well as the highly specific context in which the offense conduct occurred, are additional factors in favor of the proposed sentence.

## III. NATURE AND CIRCUMSTANCES OF THE OFFENSE

### A. The Majority of the Offense Conduct Occurred Seven Years Ago and Mr. Diaz Has Successfully Been Out on Supervised Release for the Past Two Years

The majority of the offense conduct occurred from May to October 2016 – nearly seven years ago. Additionally, for over two years, Mr. Diaz has been successfully out on pretrial release. During this two year period, Mr. Diaz has shown the Court that he can be successfully supervised out in the community and is not at risk to recidivate. (PSR, p5 ¶9).

The Ninth Circuit has specifically recognized the importance of good behavior when a significant period of time has passed since the offense conduct. It has even cited to this factor as part of its justification for imposing a probationary sentence in a bankruptcy fraud case. "[L]ook[ing] at the record with [Edwards] . . . I'm satisfied that somebody who committed these offenses . . . roughly nine years ago, and has lived the life that he has lived in the interim despite all the things that have gone on, I don't think there's a very good likelihood that he would engage in this kind of business in the future . . . ." *United States v. Edwards*, 595 F.3d 1004, 1011 (9th Cir. 2010).

Other District Courts have also held that significant weight should be afforded to defendants who have successfully served a period of pretrial supervision and where a

significant period of time has passed between the offense conduct and sentencing, "The Court views Defendant's behavior during the three-year period between the seizure of his computer and his indictment as a good indication of what society can expect from him after he completes his sentence." *United States v. Johnson*, 588 F. Supp. 2d 997 (S.D. Iowa 2008). Just as in *Edwards* and *Johnson*, Mr. Diaz's period of good behavior during pretrial release and the amount of time which was passed since the offense conduct occurred provides the Court with a reliable indicator of what to expect.

The Supreme Court has also clearly emphasized the extreme importance of post-offense rehabilitation by concluding that this consideration could justify a downward variance, noting, "post-sentencing rehabilitation evidence may be highly relevant to several § 3553(a) factors that district courts are required to consider at sentencing…Most fundamentally, that evidence provides the most up-to-date picture of his 'history and characteristic' and 'also sheds light on the likelihood that…[the defendant]…will engage in future criminal conduct, a central factor that district courts must assess when imposing sentence." *Pepper v. United States*, 562 U.S. 476, 477-478 (2011).

Therefore, in the instant case, Mr. Diaz's significant period of post-offense conduct good behavior is a reliable indicator to the Court that he is will not commit crimes in the future and also further justifies the imposition of the proposed sentence.

**B. Michelle Hadley Has Already Received Some Compensation**

As noted in the PSR, Mr. Diaz has previously paid restitution to Michelle Hadley at the conclusion of civil litigation in the amount of $45,000. (PSR, p53 ¶263). No one is disputing that Ms. Hadley suffered real harm in this case. However, it is nevertheless notable that through the civil litigation process, she has been compensated by Mr. Diaz to account for some of the harm she suffered. This prior payment should be factored into the Court's determination regarding the sentence as well as any potential restitution amount.

LAW OFFICES OF KAREN L. GOLDSTEIN

## IV. FIVE YEARS IN PRISON SATISFIES ALL THE GOALS OF SENTENCING

As discussed more in-depth below, a five-year prison sentence most effectively meets each and every goal of sentencing.

### A. The Proposed Sentence Reflects the Seriousness of the Offense, Promotes Respect for the Law, and Imposes Just Punishment

There is no question that the conduct in this case is serious. However, five years in prison, with a three year period of supervised release, is also a serious punishment. In particular, this would constitute severe and harsh punishment for Mr. Diaz who has no prior criminal history and has never served a day in jail or prison. Further, the quality of time he will spend in prison will be harsher than a typical inmates given that he is former law enforcement. Mr. Diaz will either have to request to be taken out of general population, and placed in special population, which is subject to more restrictive rules and regulations, including more limited time outside of his cell, or he will have to face the constant risk and fear that other inmates will assault or hurt him due to his prior profession. In either scenario, the time Mr. Diaz serves will be harsher as compared to a typical inmate's and this is something which the Court can, and should, consider in fashioning a just and equitable sentence. In conclusion, based on all the aforementioned factors, five years in prison would reflect the seriousness of the offense, serve as just punishment and promote respect for the law.

### B. The Proposed Sentence Adequately Serves the Goals of General and Specific Deterrence

The proposed sentence also serves the goals of general and specific deterrence. First, an extremely lengthy custodial sentence, such as that proposed by Probation, does not promote general deterrence and does not curb recidivism rates according to many empirical studies. Conversely, these studies show that a lesser period of incarceration can just as effectively promote general deterrence and that longer sentences have minimal or no benefit on whether offenders or potential offenders commit crimes. Specifically, the National Academy of Sciences (NAS) concluded that "insufficient evidence exists to

justify predicating policy choices on the general assumption that harsher punishments yield measurable deterrent effects."[1] For this reason, the National Institute of Justice of the U.S. Department of Justice ["DOJ"] found that "[i]ncreasing the severity of punishment does little to deter crime…sending an individual convicted of a crime to prison isn't a very effective way to deter crime."[2]

The sentence also serves the goal of specific deterrence because Mr. Diaz as an individual is unlikely to commit future crimes. He has no prior criminal history, with zero criminal history points, which places him in the lowest possible recidivism category. Further, his age, 45, also places him at a significantly lower recidivism risk.[3] Notably, he has also suffered significant collateral consequences. As a result of the convictions in this case, his job prospects will be severely limited. Mr. Diaz will be prohibited from ever working again in law enforcement, or for a federal agency, and he will undoubtedly be excluded from many potential employment opportunities based on his felony convictions.

As noted above, prior to this case, Mr. Diaz has never served any time in jail or prison which means that the deterrent effect of a five year prison sentence on Mr. Diaz as an individual will be severe and eye-opening. This is particularly true given that he will be an obvious target for inmate abuse due to his status as former law enforcement. Further, any lingering concerns about Mr. Diaz's risk of recidivism, which is low, could be addressed through supervised release conditions. As such, the proposed sentence more than adequately meets the goal of both specific and general deterrence.

---

[1]Brennan Center for Justice, *supra* fn.7. See also Valerie Wright, *Deterrence in Criminal Justice: Evaluating Certainty v. Severity of Punishment*, The Sentencing Project (2010) http://www.sentencingproject.org/doc/Deterrence%20Briefing%20.pdf (finding that severity of the sentence does not deter more effectively than the certainty of punishment.)

[2]National Institute of Justice," *Five Things About Deterrence* (Sept. 2014), http://www.nij.gov/five-things/pages/deterrence.aspz, *available at*, https://ncjrs.gov/pdffiles1/nij/247350.pdf.

[3]United States Sentencing Commission, *Recidivism of Federal Offenders Released in 2010* (September 2021), *available at*, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210930_Recidivism.pdf

**C. The Proposed Sentence Avoids Unwarranted Sentencing Disparities**

The proposed sentence would support the parity principle and avoid unwarranted sentencing disparities. 18 USC § 3553(a)(6). First of all, Mr. Diaz's ex-wife, Angela Connell, an unindicted alleged co-conspirator, was convicted of the same offense conduct in state court. She received a sentence of five years in state prison and served three years of the imposed sentence. Notably, Ms. Connell was sentenced for felony charges which Mr. Diaz was not convicted of, including kidnapping, attempted rape, false imprisonment, and several felonies related to check fraud, grand theft, and forgery.

Additionally, other defendants in California who have been convicted of federal cyberstalking offenses received sentences ranging from 24 months to 85 months with many defendants being sentenced to 60 months. In these cases, the victims suffered appreciable harm. In several of these cases, the victims were also particularly vulnerable because they were minors. *See generally United States v. Hughes*, 20 CR-00332-DSF (defendant sentenced to 37 months for convictions for cyberstalking, witness tampering, and threats where defendant sent death threats to numerous victims); *United States v. Chavarri*, 22 CR-00069-MEMF (defendant who was an active marine when he committed the offenses was sentenced to 60 months for three separate counts of cyberstalking where he engaged in an elaborate sextortion campaign threatening and harassing multiple young female victims); *United States v. Demirovic*, 21 CR-00133-VC (defendant sentenced to 60 months for 7 counts of cyberstalking involving hundreds of abusive communications towards multiple minor female victims); *United States v. Jason White,* 14 CR-0161-SVW (defendant sentenced to 60 months for two counts of cyberstalking involving threats to the victim's life and the life of their family and minor children); *United States v. Roberts*, 22 CR-00377-AB; *United States v. Roberts* 20 CR-00554-AB (defendant sentenced to a total of 85 months for *two* separate criminal cases (one in CA and one in GA) involving cyberstalking where defendant made repeated threats of death and rape to two female victims and their families and stalked and harassed a 15-year old female online by threatening to release nude photos of her if she did not send him additional nude

photographs, and had also suffered multiple prior state convictions for attempted extortion and distribution of intimate photos of a minor female).

Defendants in other jurisdictions have similarly received sentences ranging from 48 months to 66 months for cyberstalking convictions. *See also United States v. Dennis*, 1:20-cr-00623-JSR (defendant sentenced to 24 months for three counts of cyberstalking); *United States v. Sulik*, 807 Fed. Appx. 489 (6th Cir. 2002) (defendant convicted of one count of cyberstalking and sentenced to 48 months); *United States v. Traficante*, 966 F.3d 99 (2nd Cir. 2020) (defendant convicted of one count of cyberstalking and one count of drug distribution and sentenced to 48 months); *United States v. Lloyd*, 809 Fed. Appx. 750 (11th Cir. 2020) (defendant convicted of one count of cyberstalking and sentenced to 60 months); *United States v. Purdy*, 2022 U.S. App. LEXIS 30779 (8th Cir. 2022) (defendant convicted of one count of cyberstalking and sentenced to 60 months). *United States v. McHargue*, 2022 U.S. App. LEXIS 32004 (8th Cir. 2022) (defendant convicted of one count of cyberstalking and sentenced to 60 months); *United States v. Kazzelbach*, 2022 U.S. App. LEXIS 3888 (4th Cir. 2022) (defendant convicted of one count of cyberstalking and one count of intentionally damaging a protected computer and sentenced to 48 months where he "waged war" against his ex-girlfriend using his computer skills to exploit cybersecurity systems, filed 18 false police reports, used the courts to issue protective orders against her ultimately resulting in two different arrests, six separate warrants, and jail time on two occasions); *United States v. Fleury*, 0:19-cr-60056-RAR (defendant sentenced to 66 months for one count of interstate threats and three counts of cyberstalking where he sent kidnapping threats and taunting messages about the death of their loved ones to multiple families of victims of a mass shooting in Parkland, Florida).

Additionally, the United States Sentencing Commission's most recent 2022 sentencing data reflects that defendants convicted of stalking/harassing received a median sentence of 24 months and a median sentence of 30 months. The same data shows that

individuals convicted of Administration of Justice offenses (which includes Obstruction of Justice) received a median sentence of 12 months and a mean sentence of 16 months.[4]

Further, in analyzing sentences for defendants who were convicted of obstruction of justice related charges, even for conduct as serious as participation in the January 6th riots, nearly all the defendants were sentenced to under 60 months. In fact, many of the sentences for defendants who participated in the Capitol riot conduct have ranged from 28 months to 46 months of custody time. Lengthier sentences have been the outlier sentences and have been imposed where the defendants had participated in physically assaultive conduct against police officers involving makeshift deadly weapons.[5] *See e.g.*, *United States v. Barrett,* 1:21-cr-00038-CRC (sentenced to 54 months for 8 different charges related to the Capitol Riot including obstruction of an official proceeding and possessing a deadly or dangerous weapon while on restricted federal property and theft of government property); *United States v. Chansley*, 1:21-cr-00003-RCL (sentenced to 41 months for obstructing an official proceeding); *United States v. Fairlamb,* 1:21-cr-00120-RCL (sentenced to 41 months for obstructing an official proceeding and assaulting, resisting, or impeding officers); *United States v. Langeurand,* 1:21-cr-00353-JDB (sentenced to 44 months for obstructing an official proceeding and assaulting, resisting or impeding officers); *United States v. Miller,* 1:21-cr-00119-CJN (sentenced to 38 months for participation in the riot with gear including a grappling hook and a rope as well as tweeting assassination threats to Ocasia-Cortez after the riot); *United States v. Meredith*, 1:21-cr-00159-ABJ (sentenced to 28 months for threatening a government official with an intent to carry out the threats while in possession of a 9mm semi-automatic firearm and

---

[4]United States Sentencing Guidelines, *Annual Report and Sourcebook of Federal Sentencing Statistics*, *available at*, https://www.ussc.gov/sites/default/files/pdf/research-and publications/annual-reports-and-sourcebooks/2022/Table15.pdf. Notably, even defendants who were convicted of an assault, where a victim was physically injured, received a median of 46 months and a mean of 69 months.

[5] Defendant Robert Palmer received a sentence of 63 months where he physically assaulted police officers by swinging a metal pole, a fire extinguisher, and a wooden plank at them.

ammunition just after the Capitol riots had ended); *United States v. Rubenacker,* 1:21-cr-00193-BAH (sentenced to 41 months for 10 different charges including obstruction of an official proceeding, assaulting, resisting, or impeding certain officers, and engaging in physical violence in a restricted building or grounds); *United States v. Thompson,* 1:21-cr-00161-RBW (sentenced to 46 months for assaulting, resisting, or impeding officers with a deadly weapon).

In conclusion, in considering the above cases, recent sentencing data from the Sentencing Commission, Ms. Connell's state sentence on related charges, as well as the parity principle, a five-year sentence would be appropriate in the instant case and avoid sentencing disparity.

## V. REQUEST FOR A JUDICIAL RECOMMENDATION TO A SOUTHERN CALIFORNIA FACILITY AND OBJECTION TO SEVERAL SUPERVISED RELEASE CONDITIONS

If the Court sentences Mr. Diaz to serve a custodial sentence, counsel respectfully requests that the Court issue a recommendation to a local Southern California facility. Further, should Mr. Diaz be ordered to serve a period of supervised release, he objects to the proposed conditions (15), (16) and (17) listed below which are unduly restrictive and unreasonable:

(15) The defendant shall be limited to using only one email account. The creation and/or use of any additional email accounts shall be approved in writing by the Probation Officer.

(16) The defendant shall only use those Social Media Applications/Platforms which have been approved by the Probation Officer.

(17) The defendant shall not access or make postings to Craigslist or any other similar classified advertisements website without the written approval of the Probation Officer.

Probation has already recommended that Mr. Diaz participate in the Computer Monitoring Program which would subject all his devices, and therefore any email or

social media accounts, or activity on his devices, to strict monitoring. Therefore, additionally imposing conditions that Mr. Diaz may only use one email account without permission, may only use social media application/platforms approved by Probation, and may not access or make postings to Craigslist without Probation approval, would be unduly restrictive and unreasonable. These additional conditions should not be imposed. *See United States v. Wolf*, 699 F.3d 1082, 1090 (9th Cir. 2012) (a supervised release condition may be found unreasonable "if it infringes more on the offender's liberty than is 'reasonably necessary' to accomplish these statutory goals…[deterrence, protection of the public, or rehabilitation of the offender]….”); 18 USC § 3583(d)(2).

## VI. CONCLUSION

For the foregoing reasons, and taking into account each and every goal of sentencing as well as Mr. Diaz's § 3553(a) factors, defense respectfully requests that the Court sentence Mr. Diaz to five years of custody time followed by a three-year period of supervised release.

Dated: June 16, 2023

*_/s/ Karen L. Goldstein_*
Attorney for Ian Diaz